PUBLIC SERVICE COMMISSION, SECOND DISTRICT, and CITY OF BUFFALO, Respondents, *v.* IROQUOIS NATURAL GAS COMPANY, Appellant.

Fourth Department, July 2, 1918.

Public service corporations — gas and electricity — right of gas company to increase rates without approval of Public Service Commission — stipulation construed.

An incorporated gas company which has filed with the Public Service Commission a new schedule increasing its rates to take effect upon a certain date is entitled by virtue of the statute to increase the rate and make the increase effective thirty days after the filing of the schedule, even though the Public Service Commission has not yet sanctioned the increase and a proceeding involving that issue is still pending.

In this respect gas companies differ from railroad companies, for as to the latter a proposed increase of rates may be suspended by the Public Service Commission so that the increase will not take effect until the Commission, after a hearing and investigation, has determined that the proposed increase is proper.

Stipulation made between a gas company, the Public Service Commission and the city of Buffalo examined, and *held*, that the gas company did not bind itself not to increase its rate before such increase should be approved by the Public Service Commission, or agree not to collect the increased rates after the time limit allowed by the statute.

APPEAL by the defendant, Iroquois Natural Gas Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 31st day of May, 1918, upon the decision of the court after a trial at the Erie Special Term.

The judgment enjoined the defendant from collecting or demanding for any natural gas furnished by it in the city of Buffalo and certain other municipalities any price in excess of thirty-two cents gross or thirty cents net per 1,000 cubic feet until duly authorized by said Public Service Commission or until the further order of the court.

*Daniel J. Kenefick* [*Kenefick, Cooke, Mitchell & Bass,* attorneys], for the appellant.

*Ledyard P. Hale,* for the respondent Public Service Commission, Second District.

*Frederick C. Rupp* [*William S. Rann,* attorney], for the respondent City of Buffalo.

FOOTE, J.:

On November 30, 1917, and for five years or more prior thereto, defendant was charging its customers in the city of Buffalo and other parts of western New York, thirty-two cents gross and thirty cents net per 1,000 cubic feet for its natural gas. This was the established rate according to its schedule of rates on file with the Public Service Commission. On that day it filed with the Public Service Commission a new schedule of rates increasing the rate to thirty-seven cents gross and thirty-five cents net per 1,000 cubic feet to users of 40,000 cubic feet or less, and still higher rates to users of greater quantities, this increase to take effect January 1, 1918. Before that date, however, the effective time was changed to May 1, 1918. On May 4, 1918, this proceeding was begun, the object of which is to prevent putting into effect this increase until after the Public Service Commission shall have determined whether such increase is just and reasonable.

On December 11, 1917, the mayor of the city of Buffalo filed a complaint with the Public Service Commission against the proposed increase, and pursuant to an order of the Commission defendant on January 29, 1918, filed with the Commission its answer to this complaint. That proceeding is still pending and when determined will settle the question as to the right of the defendant to increase its rates. Meantime, but for the judgment herein the increases would have gone into effect on May first.

The question presented on this appeal is whether the defendant has a right to increase its rates and to make the increase effective prior to the time when the Public Service Commission shall determine whether the proposed increase is just and reasonable.

The Public Service Commissions Law now contains a provision as to railroad companies by which a proposed increase of rates may be suspended by the Commission so that the

increase will not take effect until the Commission has after hearing and investigation determined whether the proposed increase is proper and should go into effect. (See Consol. Laws, chap. 48 [Laws of 1910, chap. 480], § 29, as amd. by Laws of 1914, chap. 240.) There is no such provision as to gas companies, and under the statutes as they now stand it is the right of the gas company to increase its rates and make the increase effective thirty days after filing with the Commission its schedule of new rates. If complaint is filed with the Commission against the proposed increase and if the Commission itself sees fit to act without complaint, then a proceeding may be started before the Public Service Commission which will result in an investigation of the propriety of the proposed increase, the gas company having notice and the right to be heard, and when a decision is reached, if the new rate is found excessive, it will be annulled or modified according to the decision of the Commission, but this decision may not take place until some time after the new rates have gone into effect. (See Pub. Serv. Comm. Law, § 66, subd. 12; Id. § 71 *et seq.*) This is the method, and the only method, provided by statute for protecting consumers and municipalities against increases in rates by gas companies. It may be that there is a defect in the statute and that the Public Service Commission should have power to suspend or postpone the taking effect of proposed rate increases upon complaint made or even upon its own motion until a proper investigation can be had. If there is such a defect, it must be cured if at all by the Legislature. We must take the statutes as we find them.

Notwithstanding this condition of the statute law, the claim here is that the defendant had no right to increase its rates and make the increase effective before the Public Service Commission, after investigation, approved such increase because of a stipulation or agreement entered into between the defendant and the Public Service Commission in 1912.

At that time several other natural gas companies were merged with the defendant company and a proceeding was pending before the Public Service Commission to permit such merger and to authorize the defendant to increase its capital from $100,000 to $10,000,000, and to use a considerable part of the

increase in purchasing the property of the companies so to be merged. One of the questions which the Commission had to decide was whether so large an increase of the defendant's capital stock was necessary or proper and whether the property which it was to acquire by means of the additional shares of stock was of the value claimed. The Commission began and partly completed such an investigation. It was found to be a difficult task that would require a long time to complete. The city of Buffalo was represented by its corporation counsel and was objecting to so large an increase of defendant's capital, fearing that it would result in the increase of the rates of gas to consumers in that city. The Commission was evidently desirous of finding some way to obviate the necessity of carrying through to completion the difficult task of determining the value of all the assets of these different gas companies, and so, on the suggestion of the chairman of the Commission, it was arranged that the Commission would authorize the defendant to issue shares of its capital stock to the amount of $8,027,505 to the six companies and one individual whose gas plants it was to purchase and merge with its own, on condition that the defendant and the United Natural Gas Company, a Pennsylvania corporation, from whom defendant was to purchase a considerable part of its natural gas, should separately enter into written agreements and stipulations with the Commission and the city of Buffalo to be incorporated in and made a part of the Commission's order. That was done, and the purchase, merger and increase of capital were authorized by the Commission, and the question of the right of the plaintiffs to the judgment which they have been awarded at Special Term turns upon the meaning and effect of these written stipulations.

I now quote the essential parts of these stipulations necessary to an understanding of the question involved:

" 1. *   *   * ' The Iroquois Natural Gas Company stipulates that this proceeding was not instituted, nor the proposed capitalization applied for, for the purpose of raising rates.

" ' The company further stipulates that it will not use as a basis for an increase of the present rates to consumers in Buffalo, namely 32 cents gross and 30 cents net per thousand

cubic feet, the amount of capital stock authorized to be issued in this proceeding for the properties proposed to be purchased, or the valuation on which such capitalization is based, if the determination of the Commission is accepted by the company; and in any proceeding involving the reasonableness of any increase of such present rates neither the Commission, the City, nor the Company shall be bound or prejudiced by the amount of capitalization herein allowed and accepted by the Company, or the valuations herein testified to or proved.'

" 2. That in any proceedings to fix the rate or rates which shall be charged as a maximum, or otherwise, for natural gas supplied to customers within the cities, towns and villages now served by the companies whose properties are to be transferred to the Iroquois Natural Gas Company in this proceeding, hereafter had before the Public Service Commission, Second District, or other lawful authority, involving the reasonableness of the rate charged for natural gas in any of the towns, villages and cities now served or supplied by any of the persons or corporations named in this order within the State of New York, the burden of proof shall be upon said Iroquois Natural Gas Company to establish affirmatively that any price in excess of 32 cents gross and 30 cents net for each 1,000 cubic feet of natural gas is just and reasonable; and in default of evidence fairly and reasonably meeting such burden, the Commission or other lawful authority may without other proof or evidence fix and determine the just and reasonable rate for natural gas in said municipalities at 32 cents gross and 30 cents net for each 1,000 cubic feet.

" 3. That in any proceeding to fix the rates, maximum or otherwise, for natural gas to be charged by said Iroquois Natural Gas Company, hereafter had before said Public Service Commission or other lawful authority, the prices paid by said Iroquois Natural Gas Company for natural gas to any other corporation or corporations shall be open to inquiry and the burden of proof shall be upon the said Iroquois Natural Gas Company to establish affirmatively that the price so paid by it is just and reasonable or that the contract was made in good faith with a corporation by which it is not controlled

and upon the best terms that the Iroquois Natural Gas Company could obtain.

" 4. The foregoing stipulations shall not preclude the Commission, or other lawful authority, from exercising any power conferred upon it by law to investigate and determine as to the reasonableness of the existing rate of 32 cents gross and 30 cents net per 1,000 cubic feet."

5. This subdivision provides that the United Natural Gas Company of Pennsylvania shall permit examination of its books, records and property by the Commission to the same extent as if it was under the jurisdiction of the Commission in any investigation as to the reasonableness of the price paid to it by the Iroquois Natural Gas Company for gas purchased of it.

The United Natural Gas Company made a similar stipulation. These stipulations were also entered in the minutes of the proceedings of the Commission as being stipulations entered into by these companies with the city of Buffalo.

Before proceeding to consider the effect of these stipulations upon the right of the defendant to put into effect an increase of rates, a few observations should be made as to the nature of the court proceeding which has resulted in the judgment appealed from.

The proceeding was begun by petition of the Public Service Commission, and later the city of Buffalo was permitted by order to join as a petitioner. The proceeding is under section 74 of the Public Service Commissions Law. This section authorizes the Commission whenever it " shall be of opinion that a gas corporation  *  *  *  within its jurisdiction is failing or omitting or about to fail or omit to do anything required of it by law or by order of the Commission or  *  *  *  contrary to or in violation of law or of any order of the Commission," to direct its counsel to commence a proceeding in the Supreme Court to have such violations or threatened violations stopped and prevented either by mandamus or injunction.

It is apparent that to justify the injunction which has been granted it must appear that by the act of the defendant in putting into effect an increase of rates it has done an act " contrary to or in violation of law or of any order of the Com-

mission." It is apparent from what has already been said that defendant, in its attempt to increase its rates for gas, has not violated any law. It has pursued the only course which the law prescribed for putting into effect an increase of rates. Nor can I see that it has violated any order of the Commission. The allegation of the petition is that defendant " is failing and omitting and about to fail and omit to do a thing required of it by law and by order of petitioner, to wit, to furnish to consumers * * * natural gas at thirty-two cents gross and thirty cents net per thousand cubic feet until it shall have duly proven to the petitioner that said rates are unreasonable and unjust because insufficient; * * * and * * * in that it has arbitrarily and in contradiction to and violation of its express undertaking to the contrary put in force rates for natural gas in excess of thirty-two cents gross and thirty cents net per thousand cubic feet."

As I read the order of the Commission of June 5, 1912, in which was embodied copies of these stipulations, it does not have the meaning attributed to it by the petitioner to forbid an increase of rates until the gas company has proved to the Commission that its existing rates were insufficient, nor does the stipulation which defendant made have that meaning. The purpose and intent of the order and the stipulation was, as it seems to me, to prevent the valuation of $8,027,505 of the property defendant took over and which was allowed by the Commission from becoming a fixed valuation in any future proceeding which might be pending before the Commission in reference to an increase of rates by defendant to its customers, and casting the burden upon the defendant of proving the true value in any such proceeding, so that the true value would become the basis for determining the just and reasonable rate which defendant should be permitted to charge. It all had reference to a proceeding to fix the rate by the Public Service Commission. It may have been assumed by the parties that should defendant start to increase its rates by filing a new tariff schedule, a proceeding before the Commission could be instituted and a decision reached before the new rates became effective, but neither the order nor the stipulation made any provision against the taking effect of the increased rate within the time allowed by the statute

while such proceeding was pending and before its termination. The proceeding referred to in the stipulation is one to be had before the Public Service Commission. The mere filing of a schedule is not such a proceeding, nor does the beginning of such a proceeding pending the taking effect of the new rates after the filing of the schedule operate to postpone the taking effect of the new rate. The stipulation was prepared by able counsel representing the Commission, the gas company and the city, and I think we must assume that had there been any such intention, a matter of such importance would not have been left to mere inference. The stipulation as made clearly prevents the new rates from being effective longer than is necessary for the Public Service Commission to make its decision in the proceeding now pending before it to fix the rates and in that proceeding defendant is required to and has, in accordance with its stipulation, assumed the burden of proving the value of all its property as the basis for justifying its rate increase. Its agreement to assume that burden in such a proceeding was not a promise that it would not collect the increased rates after the time limit allowed by law and during the pendency of the proceedings. To hold that it was puts a strained construction upon the stipulation and in effect makes a new contract for the parties.

I think the plaintiffs were not entitled to the injunction and that the judgment should be reversed, the injunction dissolved and the petition dismissed.

All concurred.

Judgment reversed, injunction dissolved and petition dismissed, with costs.