THE CITY OF NEW YORK, Appellant, *v.* THE CITIZENS WATER SUPPLY COMPANY OF NEWTOWN, Respondent.

Second Department, December 16, 1921.

Water companies — rates — action by city of New York to have proposed rates declared illegal and to restrain defendant from refusing to supply water to private consumers — complaint does not state cause of action.

In an action by the city of New York against a water company, organized under the Transportation Corporations Law, to have certain proposed rates declared illegal and to restrain the defendant from refusing to supply water to private consumers, the complaint examined, and *held,* not to state a cause of action, as it is not alleged that the proposed rates are unjust or unreasonable, nor is it alleged that there is any controversy between the defendant and the commissioner of water supply as to the reasonableness of the proposed increase. The allegation that the proposed rates were illegal because the consent of the commissioner of water supply had not been obtained does not make the complaint sufficient, as the Greater New York charter, section 472, does not make his consent necessary.

PUTNAM and KELLY, JJ., dissent, with opinion.

APPEAL by the plaintiff, The City of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on

the 20th day of September, 1921, upon the dismissal of the complaint on a motion for judgment on the pleadings, and also from the order, entered in said clerk's office on the 9th day of September, 1921, granting defendant's motion for judgment on the pleadings, and also from an order, entered in said clerk's office on the same day, denying plaintiff's motion for an injunction *pendente lite.*

*Joseph A. Devery* [*John P. O'Brien, Corporation Counsel,* and *Morris L. Strauss* with him on the brief], for the appellant.

*Samuel F. Moran* [*George L. Ingraham* and *John D. Monroe* with him on the brief], for the respondent.

BLACKMAR, P. J.:

I think the judgment and orders should be affirmed, for the following reasons:

*First.* The question in this case does not involve a contract to supply the city with water, such as is authorized by section 81 of the Transportation Corporations Law. It concerns only the rate made to private users. In this the city has no legal interest. (*Morrell* v. *Brooklyn Borough Gas Co., No. 2,* 231 N. Y. 405.) The city is not the guardian of the interests of the citizens in disputes, whether with other citizens or public service corporations. This is certainly so in the absence of any law conferring such paternal powers upon it, and there is no such law applying in this case. The issue of the reasonableness of rates to private consumers should be raised by such consumers. (*McEntee* v. *Kingston Water Co.,* 165 N. Y. 27.)

*Second.* Even if the city has a standing to maintain the action, the complaint states no cause of action. There is no allegation that the proposed rates are unjust or unreasonable. There is an allegation that they are illegal, but only because the rates were raised without the consent of the commissioner of water supply. But the statute (Greater N. Y. Charter, § 472) does not make such consent necessary. No power to veto a reasonable increase is contained in that section; there is no allegation in the complaint that the increase is not reasonable, and there is no allegation of a controversy between the commissioner and the defendant as to the reasonableness of the proposed increase.

*Third.* I do not want to obscure the point that the city is not interested and that the complaint does not state a cause of action, but I think these additional propositions could easily be established:

(a) That section 472 of the charter does not confer upon the commissioner the power to fix·rates.   It is not consistent with the principles of a constitutional government to confer upon a commissioner the power to fix charges and rates of public service corporations, without accompanying such grant of power with the necessary incidental power of investigation, in order that rates may be fixed upon evidence and reason and not by an arbitrary exercise of irresponsible power.   No such power of investigation is conferred on the commissioner of water supply.   (*Interstate Commerce Commission* v. .*Railway Co.,* 167 U. S. 479.)

(b) That such legislative power is not conferred on the courts.   The meagre provisions of section 472 of the charter should not be stretched to confer on the courts the legislative power over rate-making, which, as to other kinds of public service, has been delegated to commissions appointed for that purpose.   The Constitution of the State, article 3, section 1, provides that " The legislative power of this State shall be vested in the Senate and Assembly."   The complexity of government, due to the great increase of population and changes in the industrial and economic conditions, has justified a delegation of certain legislative powers to commissions, but it has not yet been held to be consistent with the constitutional distribution of governmental powers between the Legislature, the courts and the executive, for the Legislature to compel the courts to exercise legislative functions.

*Fourth.* The modern development of the law, which creates commissions to represent both the public and public service corporations in arbitrating between them as to what constitutes just and reasonable rates and to exercise accordingly the legislative power of establishing rates for the future, has not been extended to private water companies.   As to such public service the law is as it was as to interstate railroads before the rate-making power was conferred on the Interstate Commerce Commission, and as to intrastate railroads, and gas, electric light and telephone companies before the enact-

ment of the present Public Service Commission Law. This may be a defect in legislation, but this court cannot remedy it nor usurp the functions of a Public Service Commission.

The judgment and orders should be affirmed, with costs.

RICH, J., concurs; MILLS, J., concurs upon the second ground stated in the opinion; PUTNAM, J., reads for reversal, with whom KELLY, J., concurs.

PUTNAM, J. (dissenting):

The revision of the city charter by Laws of 1901, chapter 466, amended section 472, the part here material being: " The commissioner of water supply, gas and electricity is hereby authorized to examine into the sources of water supply of any private companies supplying The City of New York or any portion thereof or its inhabitants with water, to see that the same is wholesome and the supply is adequate, and to establish such rules and regulations in respect thereof as are reasonable and necessary for the convenience of the public and the citizens; and the said commissioner may exercise superintendence, regulation and control in respect of the supply of water by such water companies, including rates, fares and charges to be made therefor, except that such rates, fares and charges shall not, without the consent of the grantee, be reduced by the said commissioner beyond what is just and reasonable; and in case of a controversy, the question of what is just and reasonable shall be finally determined as a judicial question on its merits by a court of competent jurisdiction."

This complaint averred that defendant, a corporation organized under the Transportation Corporations Law, had for over ten years been supplying water to consumers in the second ward of the borough of Queens, at certain rates specified; that in November, 1920, defendant had notified its consumers that on January first it would supply water under a new schedule of rates, really a fifty per cent increase; that about December twenty-third the city commissioner, acting under above section 472 of the charter, directed defendant not to put this increased schedule into effect, and offered a hearing after February first, with a thirty-day notice of such hearing to consumers. However, that no application for such hearing

was made, but instead the higher schedule had been put into effect, and in May, 1921, new bills had been sent out at the increased rates; that such bills had a notice to the effect that in case of non-payment on June fifteenth, the defendant, on twenty-four hours' notice, could discontinue the service, which would not be resumed except on paying all arrearages, *plus* five dollars costs for turning the water off and on, and the cost of replacing pavements. The complaint charges this advance was illegal, especially after the city's notice.

The relief sought was a declaration of such illegality, also that defendant and its officers be enjoined from refusing to supply water, and from discontinuing the service now furnished.

The motion papers for injunction have an affidavit on behalf of residents of the Elmhurst section of Queens borough, to the effect that they request the city to take this protective action; also that over 1,300 residents have petitioned the city for appropriate action to restrain the defendant from imposing and enforcing such excessive rates. There is a like affidavit from the Ridgewood section.

Mr. Meyer, president of defendant, deposes that this water company was formed under the Transportation Corporations Law in 1893, and began supplying water to Newtown, which, in January, 1898, became the second ward of the borough of Queens. The defendant company absorbed the Manhasset Water Company and now furnishes water to 200,000 premises in Queens, and about 850 premises in the town of North Hempstead. In Queens it supplies water for fire protection and street sprinkling, having on its lines over 1,700 hydrants. Since 1912, there being no express agreement fixing its compensation, defendant bills the city forty-five dollars a year per hydrant; but the city pays only twenty dollars on account — and defendant presents to the city disputed claims for the difference.

The learned court at Special Term found that the city was not affected by the increased rate here in question; also that section 472 of the city charter, if construed to give the commissioner of water supply, gas and electricity the rate-fixing power, would be unconstitutional. He also was of opinion that there was here no controversy between the city and defendant as to a just and reasonable rate.

This defending water company owes its existence to the Transportation Corporations Law. Section 80 permits the formation of water companies. Section 81 provides for contracts by such companies with municipalities for " pure and wholesome water at reasonable rates and cost," also for contracts for water for extinguishment of fires and for sanitary purposes. The Transportation Corporations Law confers no rate-making power either on the municipality or upon any Public Service Commission.

It has been held that the power to make special regulations to shut off water, or to hold a new occupant for prior unpaid water rates, is to be strictly construed. (See *Turner* v. *Revere Water Co.*, 171 Mass. 329.)

A private water company, by accepting its charter, was held to abuse its franchise if it failed to furnish water, and that it was its duty to supply all who should apply for water, on reasonable terms. (*Lumbard* v. *Stearns*, 4 Cush. 60. See, also, *City of New York* v. *Jamaica Water Supply Co.*, 181 App. Div. 49; affd., 226 N. Y. 572.)

Regular and continued service by such a water company for a series of years, of itself, imports a contract, so that, pending determination of its claims, the water company may be enjoined from cutting off the consumer from its system. (*McEntee* v. *Kingston Water Co.*, 165 N. Y. 27; *Pond* v. *New Rochelle Water Co.*, 183 id. 330.) The decision of *Meara* v. *Citizens Waterworks Co.* (110 Misc. Rep. 738), relied upon by defendant, was where there had been no increase of rates.

Had any State commission to regulate water rates been set up, as such bodies now control other public utilities, a different situation would be presented in which *Morrell* v. *Brooklyn Borough Gas Co., No. 2* (231 N. Y. 405) would apply. The constitutional right to delegate to the municipality the power to fix rates for water furnished cannot longer be doubted. (*Owensboro* v. *Owensboro Waterworks Co.*, 191 U. S. 358.) The only check on raising these rates is this charter provision not to fix rates, but rather to bring such a controversy in court. How could that question come into court, unless the commissioner could be informed of the basis for this advance of rates? The commissioner's letter did not abrogate a rate already established. It suggested that defendant explain its

increase. It was proper that this showing should be public, upon notice to the consumers. Possibly such an explanation might have obviated this controversy. Defendant's refusal left it to the commissioner to come into court.

Under the Transportation Corporations Law, section 81, defendant's water supply to consumers in Newtown necessarily was through a contract, which contract by consolidation passed to the city of New York. Hence the city, as successor, was in privity with defendant and had a legal standing to enforce all such contract obligations. Indeed, it is probably the only party now entitled to maintain such action. (*Wainwright* v. *Queens County Water Co.,* 78 Hun, 146; *Silberberg* v. *Citizens Water Supply Co.,* 116 Misc. Rep. 595.)

I am unable to agree that by ignoring the commissioner's request, and immediately raising rates and putting into effect defendant's purpose to cut off all who may be behind in payment of such new rates, the defendant can now maintain that it has escaped any " controversy " over the reasonableness of these increased rates. The defendant, by its direct steps of enforcement, chooses to act as if superior to any such supervision or even inquiry, and in effect disputes the commissioner's standing. These attitudes plainly open a " controversy " over the rates, and as to any reasonable basis for the proposed increase, within the purpose of this section. To say that the city has no guardianship of the interests of these consumers is either to ignore the plain words of the charter, or to question the power of the Legislature to provide such supervision over a vital public service.

Though the complaint asserts a plenary power of the commissioner to regulate and control water rates, with a claim that, against the commissioner's objection, such increases are illegal, these, however, are mere conclusions which are never good ground of demurrer. A plain and concise statement of the material facts is all that is required of a complaint. (Code Civ. Proc. § 481; now Civ. Prac. Act, §§ 241, 255.) In my view, the city's averments of fact show a disputed question of right, and raise a controversy, which should be judicially determined. That the remedy against a private water company is vested in the municipality, and not confined to the suit of the consumers has been long settled. (*Farmers' Loan*

& *Trust Co.* v. *Galesburg,* 133 U. S. 156; *City of St. Cloud* v. *Water, Light & Power Co.,* 88 Minn. 329; *Grand Haven* v. *Grand Haven Water Works,* 99 Mich. 106; *Brymer* v. *Butler Water Co.,* 172 Penn. St. 489; 179 id. 231; *Village of Bolivar* v. *Bolivar Water Co.,* 62 App. Div. 484.) Private water rates in England are usually based upon value or rental of the property supplied, and have long been subject to judicial determination. (*Rook* v. *Mayor, etc., of Liverpool,* 7 C. B. [N. S.] 240; *Sheffield Water Works Co.* v. *Bennett,* L. R. 7 Exch. 409.) Under such an act, a dispute must be first determined by the justices, even before payment of a disputed water rate can be enforced by action in a County Court. (*New River Co.* v. *Mather,* L. R. 10 C. P. 442.)

It is well settled that our courts of equity have a like power.

Having referred to the New Jersey statute for ten-year contracts with water companies, thus permitting a revision every decade, PITNEY, V. C., said: " Independent of such statutory provison, I think it is the province and the duty of the municipality, whenever opportunity offers, to exercise its power in the protection of its inhabitants against extortion, and to secure them a supply of water and of gas from corporations assuming to furnish those commodities at reasonable rates." (*Long Branch Comn.* v. *Tintern Manor Water Co.,* 70 N. J. Eq. 71, 73.) And in that case the court considered and determined what should be reasonable rates, both for public and private consumption. Its decision was unanimously affirmed by the Court of Errors (71 N. J. Eq. 790).

When the Legislature has committed such question to this court, I cannot doubt our competency to pronounce upon the merits of a new water rate, or like change in the terms of water service. On the initiative of the city, through its commissioner, the controversy is before us judicially to say whether or not the advanced rates now about to be put into operation are reasonably justified.

Hence I would reverse, and enjoin defendant from cutting off the water supply of any private consumer, as now threatened.

KELLY, J., concurs.

Judgment and orders affirmed, with costs.