JAMAICA WATER SUPPLY COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.*

Second Department, May 27, 1938.

*Jackson A. Dykman* [*Jules Haberman* with him on the brief], for the appellant.

*Herman Horowitz* [*William C. Chanler, Corporation Counsel, and Davidson Sommers* with him on the brief], for the respondent.

* Affg. 167 Misc. 863.

LAZANSKY, P. J. There is little dispute as to the principal facts; there is serious dispute as to the inferences to be drawn from the facts. Plaintiff, a domestic water works corporation, has for years supplied, and now supplies, water to the city of New York and private consumers in Queens county, and also to municipalities and private consumers in Nassau county. Plaintiff sues for hydrant service from January 1, 1934, to February 29, 1936, at the rate of forty-five dollars per hydrant per annum, and from March 1, 1936, to December 31, 1936, at the rate of forty dollars. It has been granted summary judgment as to the latter and that question is not before the court. During the earlier period, the service concededly was rendered. Dispute arises over price. Plaintiff claims the forty-five dollar rate; defendant says plaintiff is entitled to reasonable value only.

Prior to December 20, 1929, plaintiff made certain demands upon the city; and its commissioner of water supply, gas and electricity, assuming to act under section 472 of the Greater New York Charter, addressed to plaintiff a letter fixing and establishing the rate for the current year of " forty-five dollars ($45) per annum per hydrant, effective as of January 1, 1929." From that time until January, 1934, plaintiff was paid at the forty-five dollar rate. Under date of January 10, 1934, the commissioner wrote plaintiff that the fire hydrant rental previously fixed was suspended as of January 1, 1934.

Beginning July 1, 1931, there were significant happenings. Prior to that time hydrant service rendered by a private water works corporation to the city of New York was paid for under contract pursuant to section 471 of the Greater New York Charter or, if no contract was made, at reasonable rates. On July 1, 1931, chapter 715 of the Laws of 1931, amending the Public Service Law, went into effect and placed water works corporations under the jurisdiction of the Public Service Commission, except in cases, as later decided, where a municipality had entered into a contract with the waterworks company. (Public Service Law, § 89-c, subd. 10, as so added; *City of New York* v. *Maltbie*, 274 N. Y. 90 [1937].)

In anticipation of the law becoming effective, the Public Service Commission made an order on June 16, 1931, requiring every waterworks corporation under its jurisdiction to file with the Commission and to keep open to public inspection schedules of rates and charges, forms of contracts or agreements, and all rules

and regulations relating to rates, charges or service with respect to the distribution, sale or furnishing by it of water for domestic, commercial or public use.

On August 29, 1931, plaintiff filed with the Commission a tariff schedule known as " P. S. C. No. 1 (Water)," effective September 1, 1931, and to cover the period until November 1, 1931, when " P. S. C. No. 2," filed on or about September 1, 1931, was to become effective. Under date of September 29, 1931, the Public Service Commission made an order which, after referring to Schedules Nos. 1 and 2, and reciting that the schedules contain certain rates which " effect increases in certain of the effective rates and charges for water for domestic, commercial and public uses," deferred the operation of Schedule No. 2 until and including February 29, 1932, which was later extended to May 31, 1932, and directed that the " Commission enter upon a hearing concerning the propriety of the rate and charges, contracts and agreements contained in said schedules." Under date of December 20, 1932, after a hearing of which defendant had notice and at which its representative attended but really did not participate, the Commission rejected Schedule No. 2 without prejudice to an application for a review of plaintiff's schedule of rates and charges. On September 25, 1933, plaintiff filed with the Commission Schedule No. 3, to become effective November 1, 1933. On October 10, 1933, the Public Service Commission made an order approving Schedule No. 3 " without prejudice to investigation thereof, either upon complaint or upon the Commission's own motion, and without prejudice to suspension, change, or rejection of the same as may be provided by law," and directing that the Water Supply Company file with the Commission, " not later than November 21, 1933, proof that a notice to the public of the changes proposed by said schedule has been published as required by law." The record does not contain anything to indicate that such notice had been published or that such proof had been filed. On October 2, 1934, the Public Service Commission made an order directing an investigation " as to the rates, charges or classifications of service for water sold and delivered by Jamaica Water Supply Company." On January 23, 1936, the Commission made an order directing plaintiff to file and publish rates and charges to be effective March 1, 1936, on not less than three days' notice to the public and the Commission. A flat annual rate of forty dollars per hydrant for public fire protection in the entire territory was stated.

In Schedules Nos. 1, 2 and 3, under the title " Public Fire Protection," the city of New York is referred to as follows:

JAMAICA WATER SUPPLY COMPANY

SERVICE CLASSIFICATION NO. 6

Applicable to use of service for:
Public Fire Protection.

Character of Service:
Continuous.

Rate: Flat-annual.

New York City
Per Hydrant............................... $45.00
Rate fixed by order of Commissioner of Department of Water Supply, Gas and Electricity of The City of New York, dated January 1, 1929. (Include, without extra charge, water supplied to police stations and fire houses.)

Nassau County
Per Hydrant............................... 40.00
Rate fixed by contracts with the several towns and villages and with private parties.

Minimum Charge:
None.

Terms of Payment:
Net cash.  Payable semi-annually.

Term:
None.

Special Provisions:
Attention is drawn to the difference between the hydrant rental rates for Nassau County and for New York City.  The Company is advised by counsel that it should continue to comply with the terms of its agreements with the several towns and villages in Nassau County unless and until they are set aside by competent legal authority in a proceeding in which the other parties thereto may have an opportunity to appear and be heard.

In the " Table of Contents " of Schedule No. 1 appears the word " Contracts " with a reference to Leaf No. 19, which leaf refers to Schedule No. 2.  In the " Table of Contents " of Schedules Nos. 2 and 3, under the heading " Contracts," appears, among others, the following: " Order — The City of New York, Number

, Service Classification        ," and reference to certain leaves in the body of the schedule.   The leaves referred to are as follows:

JAMAICA WATER SUPPLY COMPANY

CONTRACTS

Contract No. 12

ORDER

of

COMMISSIONER OF DEPARTMENT OF WATER SUPPLY,

GAS AND ELECTRICITY OF THE

CITY OF NEW YORK

to

JAMAICA WATER SUPPLY COMPANY

Term:   None Stated.

Date:   December 20, 1929.

Date Effective:   January 1, 1929.

Date of Termination:   No Date Stated.

The foregoing by reference appears in Schedule No. 1.

In Schedules Nos. 2 and 3 the following appears:

JAMAICA WATER SUPPLY COMPANY

CONTRACTS

DEPARTMENT WATER SUPPLY, GAS AND ELECTRICITY

MUNICIPAL BUILDING

Then follows therein the letter of the commissioner of water supply of December 20, 1929, establishing the forty-five dollar rate, to which reference has already been made.

Defendant, citing *City of New York* v. *Maltbie (supra)*, holding that the Public Service Commission has no jurisdiction where there is a contract between a municipality and a water company, argues that there was such contract up to January 1, 1934, and, therefore, although schedules had been filed by plaintiff before that time, they were ineffective to create a fixed rate as to the city, and plaintiff was entitled to be paid reasonable value only.   It is also claimed by defendant that, even if there were no contract, the schedules were not binding upon the city until an investigation had been made by the Commission as to their reasonableness and a rate established after such investigation.   Plaintiff insists there was no contract with the city; that the filing of the schedules created the rate without preliminary investigation and were binding as long as they remained unchanged.   To this the record suggests another possibility, *i. e.*, even if there were a contract beginning with 1929, it was revoked by the filing of schedules if plaintiff

meant that the schedules were filed under the Public Service Law for the purpose of creating a rate and not merely as information for the benefit of the Public Service Commission.

If there were no contract with the city of New York, the schedules, if filed pursuant to the Public Service Law, would be binding on defendant from the time of filing until the order of the Public Service Commission, effective March 1, 1936, creating a forty-dollar rate. Public Service Law, section 89-c, subdivision 10, as added by chapter 715 of the Laws of 1931, provides for the filing of schedules. Reference to investigation is limited to investigation after schedules are filed. The amendment to the Public Service Law dealing with water companies is practically the same as the statutory provisions with reference to gas companies. In the case of gas companies the filing of schedules establishes the rate. (*Public Service Commission* v. *Iroquois Nat. Gas Co.*, 184 App. Div. 285; affd., without opinion, 226 N. Y. 580; *Town of North Hempstead* v. *P. S. Corp.*, 231 id. 447; *Pub. Serv. Comm.* v. *Pavilion Nat. Gas Co.*, 232 id. 146. See, also, *Midland Co.* v. *Kansas City Power Co.*, 300 U. S. 109; *People ex rel. New York Steam Co.* v. *Straus*, 186 App. Div. 787; affd., without opinion, 226 N. Y. 704.)

There are other questions to be considered, two of which follow:

(1) Was there, as held by the Special Term, a contract between the water company and the city at the time the schedules were filed, which would mean that the Public Service Commission had no jurisdiction and the schedules were ineffective?

(2) If there were such contract, was it intended to be revoked by the filing of the schedules?

The commissioner of water supply, by action on his part alone, had no power to enter into a contract for hydrant service with the water company (Greater New York Charter, § 471), or to establish rates under section 472 of the charter, as he claimed in his letter of December 20, 1929. (*City of New York* v. *Citizens Water Supply Co.*, 199 App. Div. 169; affd., 235 N. Y. 584.) Under the express terms of section 471 of the charter, he could not enter into a contract unless, preliminarily to the execution thereof, the assent of the board of estimate and apportionment, together with the separate written consent of both the mayor and the comptroller, should be obtained. Nevertheless, the order of December 20, 1929, effective January 1, 1929, was made for a forty-five dollar rate, and plaintiff accepted that rate up to and including December 31, 1933. The city agreed, through its commissioner, to pay forty-five dollars per hydrant; plaintiff, which was compelled under section 42 of the Transportation Corporations Law to furnish the service, agreed to accept that rate. There was no term arranged

for and thus it was at will. Though unenforcible and revocable at any time by either of the parties, it was accepted and acted upon by each; under it plaintiff received many thousands of dollars, and it may not now be heard to say that, during the period up to January 1, 1934, before which the schedules were filed, there was no contract — unless it appears that by the filing of the schedules or any of them, with notice thereof to the city, the contract was annulled by plaintiff, intending that the schedules should be the binding arrangement between the city and it — in other words, that thenceforth plaintiff would make its claim for hydrant service pursuant to the provisions of the Public Service Law, as amended, effective July 1, 1931, and not pursuant to the order of the commissioner of water supply of December 20, 1929. The answer can only be evolved out of an intricate state of conflicting facts.

Schedule No. 1, filed August 29, 1931, contains a reference to public rates not only for Queens county but also for Nassau county. If it were intended by this schedule to fix a public rate under the Public Service Law, it may be asked, would not the schedule recite the rate only? Yet there is printed in full the order of the commissioner of the department of water supply, gas and electricity, dated December 20, 1929, effective as of January 1, 1929, by which the rate of forty-five dollars, pursuant to which plaintiff was paid, was established. Does this not indicate that this rate of forty-five dollars was published merely for the information of the commission and that the water company intended to continue to give service under the rate arranged for with the commissioner? On the other hand, there is a reference to the Nassau county contracts, from which a conclusion favorable to plaintiff might be drawn. By it the water company draws attention to the " difference between the hydrant rental rates for Nassau County and for New York City," and to the fact that the company is advised by counsel " that it should continue to comply with the terms of its agreements with the several towns and villages in Nassau County," etc., indicating by inference that it did not intend to continue its contract with the city of New York. However, in Schedule No. 1 reference is made, under the heading " Contracts," to Schedule No. 2 to be filed simultaneously with Schedule No. 1. In Schedule No. 2 one finds the same reference to the order of the commissioner of water supply, gas and electricity, and the same reference to Nassau county, as in Schedule No. 1. In the " Table of Contents," under the title " Contracts," is found: " Order — The City of New York. Number 12, Service Classification 4, Leaf 114." The content thereof, under the title " Contracts," has been set forth in full in the statement of facts. In Schedule No. 3 exactly

the same state of facts exists. So there is real persuasive indication, not only that plaintiff believed it had a contract with the city, but also that the contract was in existence at the time of the filing of Schedules Nos. 1, 2 and 3.

On the other hand, with reference to Schedule No. 2, it should be noted that on September 29, 1931, the Commission made orders deferring its operation until and including May 31, 1932, and directed that the Commission enter upon a hearing concerning the propriety of the rates and charges, etc. A notice of a hearing before the Public Service Commission was given the deputy and acting commissioner of water supply, who requested plaintiff to furnish a copy of the tariff schedule, which was furnished. A hearing was had before the Public Service Commission, at which plaintiff attended. Defendant admits that a representative of the city attended and asserted that the city had no interest in the proceeding and would not be bound by any valuations approved in the proceeding. The minutes of the hearing recite the appearance of the corporation counsel of the city of New York. On December 20, 1932, the Public Service Commission rejected Schedule No. 2 without prejudice to an application for review of plaintiff's schedule of rates and charges. There is nothing in the record to indicate what material was presented to the Public Service Commission. Whether or not the forty-five-dollar rate was specifically considered and rejected does not appear, for there were many other rates and schedules. However, out of the schedule as a whole, the appearance of plaintiff and defendant, and the action of the Commission, there could be drawn an inference that plaintiff was depending upon the Public Service Law for the fixation of rates and had abandoned the order of the water commissioner as decisive in the matter.

It will be remembered that by orders of the Commission the operation of Schedule No. 2 was deferred until May 31, 1932. Did it go into effect then and remain so until it was rejected by the Commission on December 20, 1932? In an affidavit submitted by plaintiff it is stated it never went into effect. Does this not tend to show that plaintiff did not rely upon Schedule No. 2 to create a rate?

On October 10, 1933, within several weeks after its filing, Schedule No. 3 was approved by the Commission. If the schedule in so far as the rate with the city was concerned was filed merely for information, then, of course, the approval was of no consequence. Schedule No. 3 was the only schedule on file when, on October 2, 1934, the Commission made an order directing an investigation as to the rates of plaintiff. Defendant had notice thereof. On

January 23, 1936, the Commission made an order directing plaintiff to file and publish rates to be effective March 1, 1936, and fixing the rates for hydrant service at forty dollars. It thus would seem that the Commission considered Schedule No. 3 as the rate filed up to the time that it made the change at forty dollars as of March 1, 1936.

Just when this investigation began does not appear. In the opinion of one of the commissioners on a motion in August, 1937, by defendant for a rehearing of the investigation resulting in the order of January 23, 1936, it is stated that one of the items investigated was the hydrant rate now under consideration. This would indicate that at some time after January 1, 1934, plaintiff may have taken the position that it would depend upon Schedule No. 3, filed at a time when, it is claimed by defendant, a contract with the city was in force, and thus the Public Service Commission was without jurisdiction. Assuming that plaintiff had the right to take that position, when was it that plaintiff asserted it? It is hard to tell in view of the dual stand taken by plaintiff, now to be considered.

Some time in May, 1935, plaintiff commenced an action against the city to recover for hydrant service from January 1, 1934, to December 31, 1934. It will be remembered that this is for a period subsequent to the time that the city's commissioner of water supply claimed to revoke the forty-five-dollar rate, and after the Public Service Commission had approved Schedule No. 3, and for the last three months, October to December, and after the Commission had ordered an investigation of rates. In the complaint it is recited that during the year 1929 and during each succeeding year, including the year 1934, plaintiff rendered hydrant service to the city. Reference is made to the fixation of rates by the commissioner of water supply under section 472 of the Greater New York Charter, and to the fact that in the year 1929 the commissioner fixed the rate at forty-five dollars per hydrant, and " that the plaintiff accepted such rate as just and reasonable for the service rendered and from time to time duly presented to the City of New York bills at such rate for such service covering the hydrant service rendered in the year 1929 and in each subsequent year to and *including the year 1933*, and such bills were duly audited, allowed and paid by the City of New York to the plaintiff." It is then alleged, on information and belief, " that the rate for hydrant service " fixed by the commissioner of water supply in 1929 " continued in full force and effect during the year 1934 and is applicable to the hydrant service rendered by the plaintiff to the defendant during the year 1934," notwithstanding the new fixation of rate at eighteen dollars and fifty cents

per hydrant by the commissioner on December 27, 1934, effective January 1, 1934. Does not this plainly demonstrate that plaintiff was clinging to the forty-five dollar rate made in 1929 by the commissioner of water supply and was not relying upon Schedules 1, 2 and 3?

Despite the allegation that plaintiff was entitled to be paid pursuant to the order of the commissioner of water supply, made in 1929, continuing in full force and effect during the year 1934, plaintiff refers to the Public Service Law and the filing of schedules by it in August, 1931, showing a forty-five dollar rate, and states " said rate and charge has ever since September 1, 1931, and is now, in full force and effect." By this complaint plaintiff was asserting both its right to the forty-five-dollar rate under the order of the commissioner of water supply of December, 1929, and also under the Public Service Law. These were inconsistent claims.

The notice of claim filed by plaintiff, prior to the commencement of the action just referred to, addressed to the comptroller and to the corporation counsel, is upon the basis of the rate established by the commissioner of water supply in 1929. This is dated November 8, 1934, and nothing is therein contained in respect of schedules filed with the Public Service Commission. However, on January 30, 1935, a supplemental claim was filed in which it is stated that the claim is based on " claimant's schedule on file with the Public Service Commission." The action just referred to was discontinued June 28, 1937. This indecisive attitude of plaintiff continued until just before the commencement of this action, the complaint in which was verified June 30, 1937.

On the foregoing statement of facts it seems clear that there must be a trial of the following questions: (1) Were Schedules Nos. 1, 2, and 3 or either of them filed by plaintiff under and pursuant to the Public Service Law for the purpose of establishing rates as a result of which the contract with the city of New York, though unenforcible, was brought to an end, or (2) were such schedules filed solely for the purpose of the information of the Commission and without any intent on the part of plaintiff to withdraw from its arrangement with the city, begun in 1929? If the former, then plaintiff would be entitled to the forty-five dollar rate from January 1, 1934, to February 29, 1936. If the latter, then, because of the existence of a contract between plaintiff and defendant, the Public Service Commission would have no jurisdiction; and as the city had canceled the contract as of January 1, 1934, plaintiff would be entitled to the reasonable value of its service.

Surely here is " confusion worse confounded;" in its desire to protect itself, plaintiff has drawn a veil of obscurity over its intent.

It will require a trial to dissipate the one and to lift the other. Upon such trial, the exact conditions will be disclosed.

The order, to the extent that it denies the motion for summary judgment, should be affirmed, with ten dollars costs and disbursements.

DAVIS and TAYLOR, JJ., concur; HAGARTY, J., dissents and writes for a modification of the order and for granting plaintiff's motion for summary judgment for water hydrant rentals for the period between January 1, 1934, and February 29, 1936; JOHNSTON, J., concurs with HAGARTY, J.

HAGARTY, J. (dissenting). On the 1st day of July, 1931, article 4-B, added to the Public Service Law on April 24, 1931, became effective (Laws of 1931, chap. 715, § 3). It placed private water supply companies under the jurisdiction of the Public Service Commission, and, in so far as the parties to this litigation are concerned, provided that, in the absence of an existing contract, the fixation of rates between them rested in the Public Service Commission, superseding and repealing, to that extent, the provisions of section 472 of the Greater New York Charter. (*City of New York* v. *Maltbie,* 274 N. Y. 90, 99, 100.)

The rate-fixing method adopted by the Legislature in enacting article 4-B is similar to that employed with respect to other utility corporations. (Cf. Public Service Law, § 66, subd. 12: § 89-c subd. 10.) It is the filing of schedules of rates by the company with the Commission which fixes the rate. The Commission may suspend operation of a schedule or schedules for a designated period of time and even, after a rate is effective, may conduct an investigation and prescribe a just and reasonable rate. (Public Service Law, § 89-c, subd. 4.) It is compelled to conduct a hearing and make a determination upon complaint, in writing, of the mayor of a city, among others named. (Public Service Law, §§ 89-i, 89-j.) It seems clear, however, that if schedules are filed in accordance with the direction of the Commission and are not suspended, but, to the contrary, are approved by the Commission, such rates then become effective, subject, of course, to the foregoing safeguards as to reasonableness. (*People ex rel. New York Steam Co.* v. *Straus,* 186 App. Div. 787; affd., without opinion, 226 N. Y. 704; *Public Service Commission* v. *Iroquois Nat. Gas Co.,* 184 App. Div. 285; affd., without opinion, 226 N. Y. 580; *Town of North Hempstead* v. *P. S. Corp.,* 231 id. 447; *Pub. Serv. Comm.* v. *Pavilion Nat. Gas Co.,* 232 id. 146; *Midland Co.* v. *Kansas City Power Co.,* 300 U. S. 109.)

In accordance with the jurisdiction vested in it by this new legislation, the Commission directed every waterworks corporation to

file with it schedules of rates and charges. Plaintiff did so on the 29th day of August, 1931, and, on the 1st day of September, 1931, filed a superseding schedule to become effective as of the 1st day of November, 1931, the operation of which the Commission suspended pending a hearing, and thereafter, and on the 20th day of December, 1932, rejected the schedule. Thereafter, and on or about the 25th day of September, 1933, effective as of the 1st day of November, 1933, plaintiff filed a third schedule, and on the 10th day of October, 1933, the Commission made an order approving it. This order directed plaintiff to file proof of notice to the public " of the changes proposed by said schedule," but that provision is immaterial to the rate with which we are concerned here, as no change was effected.

The rate with which we are concerned is one for service to the defendant, set forth in the schedules at forty-five dollars per hydrant per annum and described therein as follows: " Rate fixed by order of Commissioner of Department of Water Supply, Gas and Electricity of The City of New York, dated January 1, 1929. (Include, without extra charge, water supplied to police stations and fire houses.) " If the rate so fixed by the city commissioner was efficient to constitute a contract between the parties, in existence at the time of the filing of the schedule, despite the order of the Commission directing such filing in accordance with the Public Service Law (§ 89-c subd. 10) and the approval of the Commission, the latter was without jurisdiction. On the other hand, if there were no such contract in existence, in accordance with the language of the article (Public Service Law, § 89-c, subd. 10), and the foregoing authority, the Commission had jurisdiction and the rate was fixed by the filing of the schedule. The vital question here, then, is whether or not such a contract was in existence at the time the schedule was filed. A contract, of course, is a legal and binding agreement enforcible at the instance of either party. In the absence of such a contract, neither of the parties here could deny or impair the jurisdiction exercised by the Commission. The plaintiff, for example, could not obey the direction of the Commission and thereafter be heard to deny its jurisdiction on the ground that at the time of filing such schedule it had the intention not to be bound thereby but to rely, instead, on the rate previously fixed by a city commissioner, if in fact the latter had no power to fix such a rate.

At the time of the filing of the schedule with the Commission there was no contract in existence between the parties. The city commissioner had purported to fix a rate " for the current year " on the 20th day of December, 1929, while " acting under authority of section 472 of the Charter." The provisions of that section

vested in him no such power (*City of New York* v. *Citizens Water Supply Co.*, 199 App. Div. 169; affd., without opinion, 235 N. Y. 584) and, in any event, the rate, even if fixed, expired at the termination of the current year. (*Queens County Water Co.* v. *City of New York*, 186 App. Div. 512, 514 [1st Dept.]; *Harlem Gaslight Co.* v. *Mayor, etc., of N. Y.*, 33 N. Y. 309.) There was, therefore, no contract between the parties at the time the third schedule was filed and approved by the Commission, and the jurisdiction of the Commission was complete. It is well-settled law that officers and employees cannot, by their conduct, estop a municipality. The city was not bound by the unlawful act of its commissioner, and neither was the plaintiff.

After the fixation of the rate under the Public Service Law as of the 1st day of November, 1933, and on the 10th day of January, 1934, a succeeding city commissioner purported to suspend the forty-five dollar rate fixed in 1929 by his predecessor, which rate was a nullity. Subsequently, and on the 27th day of December, 1934, this city commissioner purported to fix a new rate, effective as of the 1st day of January, 1934, at eighteen dollars and fifty cents per hydrant per annum. In the absence of a contract between the parties fixing this rate, it could not supersede that previously fixed under the jurisdiction of the Public Service Commission. Thereafter, however, and upon investigation of the Commission conducted on its own initiative, the rate was reduced, pursuant to the Public Service Law, from forty-five dollars to forty dollars per hydrant per annum, effective as of March 1, 1936. That plaintiff is entitled to summary judgment at that rate, commencing as of March 1, 1936, is not disputed by the defendant.

For the period commencing the 1st day of January, 1934, and terminating on the 29th day of February, 1936, the rate as fixed in accordance with law was forty-five dollars. There is no dispute as to the facts, and therefore, in my opinion, there is no issue to be tried. The plaintiff is entitled to summary judgment.

For the foregoing reasons, I dissent and vote to modify the order, in so far as appealed from, by striking out the denial of the motion for summary judgment for payment of water hydrant rentals for the period between January 1, 1934, and February 29, 1936, and by substituting in lieu thereof a decretal provision granting plaintiff's motion, and, as so modified, to affirm, with ten dollars costs and disbursements to appellant.

JOHNSTON, J., concurs.

Order, in so far as it denies plaintiff's motion for summary judgment affirmed, with ten dollars costs and disbursements.