Hagarty, J.
(dissenting). On the 1st day of July, 1931, article 4-B, added to the Public Service Law on April 24, 1931, became effective (Laws of 1931, chap. 715, § 3). It placed private water supply companies under the jurisdiction of the Public Service Commission, and, in so far as the parties to this litigation are concerned, provided that, in the absence of an existing contract, the fixation of rates between them rested in the Public Service Commission, superseding and repealing, to that extent, the provisions of section 472 of the Greater New York Charter. (City of New York v. Maltbie, 274 N. Y. 90, 99,100.)
The rate-fixing method adopted by the Legislature in enacting article 4-B is similar to that employed with respect to other utility corporations. (Cf. Public Service Law, § 66, subd. 12: § 89-c subd. 10.) It is the filing of schedules of rates by the company with the Commission which fixes the rate. The Commission may suspend operation of a schedule or schedules for a designated period of time and even, after a rate is effective, may conduct an investigation and prescribe a just and reasonable rate. (Public Service Law, § 89-c, subd. 4.) It is compelled to conduct a hearing and make a determination upon complaint, in writing, of the mayor of a city, among others named. (Public Service Law, §§ 89-i, 89-j.) It seems clear, however, that if schedules are filed in accordance with the direction of the Commission and are not suspended, but, to the contrary, are approved by the Commission, such rates then become effective, subject, of course, to the foregoing safeguards as to reasonableness. (People ex rel. New York Steam Co. v. Straus, 186 App. Div. 787; affd., without opinion, 226 N. Y. 704; Public Service Commission v. Iroquois Nat. Gas Co., 184 App. Div. 285; affd., without opinion, 226 N. Y. 580; Town of North Hempstead v. P. S. Carp., 231 id. 447; Pub. Serv. Comm. v. Pavilion Nat. Gas Co., 232 id. 146; Midland Co. v. Kansas City Power Co., 300 U. S. 109.)
In accordance with the jurisdiction vested in it by this new legislation, the Commission directed every waterworks corporation to *334 file with it schedules of rates and charges. Plaintiff did so on the 29th day of August, 1931, and, on the 1st day of September, 1931, filed a superseding schedule to become effective as of the 1st day of November, 1931, the operation of which the Commission suspended pending a hearing, and thereafter, and on the 20th day of December, 1932, rejected the schedule. Thereafter, and on or about tho 25th day of September, 1933, effective as of the 1st day of November, 1933, plaintiff filed a third schedule, and on the 10th day of October, 1933, the Commission made an order approving it. This order directed plaintiff to file proof of notice to the public “ of the changes proposed by said schedule,” but that provision is immaterial to the rate with which we are concerned here, as no change was effected.
The rate with which we are concerned is one for service to the defendant, set forth in the schedules at forty-five dollars per hydrant per annum and described therein as follows: “ Rate fixed by order of Commissioner of Department of Water Supply, Gas and. Electricity of The City of New York, dated January 1, 1929. (Include, without extra charge, water supplied to police stations and fire houses.) ” If the rate so fixed by the city commissioner was efficient to constitute a contract between the parties, in existence at the time of the filing of the schedule, despite the order of the Commission directing such filing in accordance with the Public Service Law (§ 89-c subd. 10) and the approval of the Commission, the latter was without jurisdiction. On the other hand, if there were no such contract in existence, in accordance with the language of the article (Public Service Law, § 89-c, subd. 10), and the foregoing authority, the Commission had jurisdiction and the rate was fixed by the filing of the schedule. The vital question here, then, is whether or not such a contract was in existence at the time the schedule was filed. A contract, of course, is a legal and binding agreement enforcible at the instance of either party. In the absence of such a contract, neither of the parties here could deny or impair the jurisdiction exercised by the Commission. The plaintiff, for example, could not obey the direction of the Commission and thereafter be heard to deny its jurisdiction on the ground that at the time of filing such schedule it had the intention not to be bound thereby but to rely, instead, on the rate previously fixed by a city commissioner, if in fact the latter had no power to fix such a rate.
At the time of the filing of the schedule with the Commission there was no contract in existence between the parties. The city commissioner had purported to fix a rate “ for the current year ” on the 20th day of December, 1929, while “ acting under authority of section 472 of the Charter.” The provisions of that section *335 vested in him no such power (City of New York v. Citizens Water Supply Co., 199 App. Div. 169; affd., without opinion, 235 N. Y. 584) and, in any event, the rate, even if fixed, expired at the termination of the current year. (Queens County Water Co. v. City of New York, 186 App. Div. 512, 514 [1st Dept.]; Harlem Gaslight Co. v. Mayor, etc., of N. Y., 33 N. Y. 309.) There was, therefore, no contract between the parties at the time the third schedule was filed and approved by the Commission, and the jurisdiction of the Commission was complete. It is well-settled law that officers and employees cannot, by their conduct, estop a municipality. The city was not bound by ihe unlawful act of its commissioner, and neither was 1he plaintiff.
After the fixation of the rate under the Public Service Law as of the 1st day of November, 1933, and on the 10th day of January, 1934, a succeeding city commissioner purported to suspend the forty-five dollar rate fixed in 1929 by his predecessor, which rate was a nullity. Subsequently, and on the 27th day of December, 1934, this city commissioner purported to fix a new rate, effective as of the 1st day of January, 1934, at eighteen dollars and fifty cents per hydrant per annum. In the absence of a contract between the parties fixing ibis late, it could not supersede that previously fixed under the jurisdiction of the Public Service Commission. Thereafter, however, and upon investigation of the Commission conducted on its own initiative, the rate was reduced, pursuant to the Public Seivice Law, from forty-five dollars to forty dollars per hydrant per annum, effective as of March 1, 1936. That plaintiff is entitled to summary judgment at that rate, commencing as of March 1, 1936, is not disputed by the defendant.
For the period commencing the 1st day of January, 1934, and terminating on the 29th day of February, 1936, the rale as fixed in accordance with law was for<y-five dollars. There is no dispute as to the facts, and therefore, in my opinion, there is no issue to be tried. The plaintiff is entitled to summary judgment.
For the foregoing reasons, I dissent and vote to modify the order, in so far as appealed from, by striking out the denial of the motion for summary judgment for payment of water hydrant rentals for the period between January 1, 1934, and February 29, 1936, and by substituting in lieu thereof a decretal provision granting plaintiff’s motion, and, as so modified, to affirm, with den dollars costs and disbursements to appellant.
Johnston, J., concurs.
Order, in so far as it denies plaintiff’s motion for summary judgment affirmed, with ten dollars costs and disbursements.