THE CITY OF NEW YORK, Appellant, v. MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Argued March 1, 1937; decided April 27, 1937.

*Paul Windels,* Corporation Counsel (*Herman Horowitz* and *Joseph L. Weiner* of counsel), for appellant. The Public Service Commission is without jurisdiction to fix rates for hydrant services furnished to the city of New York. Jurisdiction must be expressly conferred upon the Commission. (*City of New York* v. *Interborough R. T. Co.,* 257 N. Y. 20; *Matter of Village of Boonville* v. *Maltbie,* 272 N. Y. 40.) The Public Service Law (Cons. Laws, ch. 48) expressly denies to the Commission jurisdiction over hydrant or other rates and charges by water companies to municipalities. (*Village of Horseheads* v. *Elmira Water, Light & R. R. Co.,* 23 St. Dept. Rep. 398;

*City of New York* v. *New York Edison Co.*, 196 App. Div. 644; *Matter of Town of Mamaroneck* v. *N. Y. Inter-Urban Water Co.*, 203 App. Div. 122; 235 N. Y. 563; *N. Y., N. H. & H. R. R.* v. *I. C. C.*, 200 U. S. 361; *Kings County Lighting Co.* v. *City of N. Y.*, 176 App. Div. 175; 221 N. Y. 500; *Browne* v. *City of New York*, 241 N. Y. 96.) The charter of the city of New York (L. 1901, ch. 466) contains a statutory scheme for the furnishing of services by water companies to the city and this statutory scheme is safeguarded from Commission interference by express legislative provisions. (*People ex rel. City of New York* v. *Queens County Water Co.*, 232 N. Y. 277; *City of New York* v. *Jamaica Water Supply Co.*, 181 App. Div. 49; 226 N. Y. 572; *Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318; *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587; *Danville Water Co.* v. *Danville City*, 180 U. S. 619; *Rogers Park Water Co.* v. *Fergus*, 180 U. S. 624; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Willcox*, 200 N. Y. 423; *People ex rel. City of New York* v. *Belt Line Ry. Corp.*, 230 N. Y. 86.)

*Jackson A. Dykman* and *Jules Haberman* for Jamaica Water Supply Company, respondent. The Public Service Law (Cons. Laws, ch. 48) grants jurisdiction to the Commission over rates and charges. (*City of New York* v. *Interborough R. T. Co.*, 257 N. Y. 20; *Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *New York ex rel. Woodhaven Gas Light Co.* v. *Pub. Serv. Comm.*, 269 U. S. 244; *Vil. of Saratoga Springs* v. *Saratoga G. Co.*, 191 N. Y. 123; *People ex rel. C. P., etc., R. R. Co.* v. *Willcox*, 194 N. Y. 383; *City of New York* v. *Citizens Water Supply Co.*, 199 App. Div. 169; 235 N. Y. 584; *Morrell* v. *Brooklyn Borough Gas Co.*, 231 N. Y. 405; *Matter of Niagara, Lockport & O. P. Co.* v. *Prendergast*, 229 App. Div. 295; *Silberberg* v. *Citizens Water Supply Co.*, 116 Misc. Rep. 595; 208 App. Div. 818; *Matter of City of Yonkers* v. *Maltbie*, 231 App. Div. 415.) The charter of the city

of New York contains no statutory scheme protected from Commission interference. (*Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318; *New York State Electric & Gas Corp.* v. *Maltbie*, 241 App. Div. 780; 266 N. Y. 521.)

*George E. McVay, Raymond J. McVeigh* and *Gay H. Brown* for Public Service Commission, respondent. The Commission had jurisdiction of the subject-matter and complete power and authority under the statute to make its order. (Cons. Laws, ch. 48, art. 4-B.) In the absence of contract the Commission has exercised jurisdiction over utility rates to municipalities. (*People ex rel. Consolidated Water Co.* v. *Maltbie*, 245 App. Div. 866.) The provisions of the charter of the city of New York, authorizing the fixing of water rates by the Commissioner of the Department of Water Supply, Gas and Electricity are unconstitutional. (*Matter of McAneny* v. *Board of Estimate & Apportionment*, 232 N. Y. 377; *City of New York* v. *Citizens Water Supply Co.*, 199 App. Div. 169; 235 N. Y. 584; *Morrell* v. *Brooklyn Borough Gas Co.*, 231 N. Y. 398; 231 N. Y. 405; *Silberberg* v. *Citizens Water Supply Co.*, 116 Misc. Rep. 595; 208 App. Div. 818.)

HUBBS, J. The complaint in this action prays for a declaratory judgment adjudging that the Public Service Commission has no jurisdiction to fix, investigate or regulate hydrant rates for hydrant services heretofore or hereafter rendered by the defendant Jamaica Water Supply Company to the city of New York; that the hydrant rate heretofore fixed for such hydrant service be declared null and void and that the Public Service Commission and the other defendants be enjoined from doing any act or commencing any suit in law or equity based upon the order made by the Commission on January 23, 1936, in so far as it fixed a hydrant rate to be paid by the plaintiff to the Jamaica Water Supply Company.

The respondent moved under rule 106 of the Rules of Civil Practice to dismiss the complaint on the ground

that it does not state facts sufficient to constitute a cause of action. The Special Term granted the motion and the order has been affirmed by the Appellate Division.

Broadly stated, the position of the appellant is that the Public Service Commission was without jurisdiction to make the order which it made. The determination of that question involves an examination of the relevant statutes, particularly sections 471 and 472 of the Greater New York Charter (Laws of 1901, ch. 466), which purport to vest in the Commissioner of Water Supply, Gas and Electricity authority to fix in the first instance the " rates, fares and charges " to be paid to water companies, and article 4-B of the Public Service Law (Cons. Laws, ch. 48; Laws of 1931, ch. 715), which respondents contend confers upon the Public Service Commission jurisdiction over rates to be charged municipalities for water for public uses by private water companies.

Section 471 provides in substance that all contracts concerning the public water supply shall be made only in accordance with the provisions of the act. Section 472 reads in part: " * * * The commissioner of water supply, gas and electricity * * * may exercise superintendence, regulation and control in respect of the supply of water by such water companies, including rates, fares and charges to be made therefor."

Those sections were enacted in the city charter in 1897. (Laws of 1897, ch. 378.) Prior to January 1, 1934, the respondent Jamaica Water Supply Company furnished water to the city for fire protection and other purposes. For such hydrant services the city by contract agreed to pay and did pay $45 per hydrant per annum. On or about January 10, 1934, the Commissioner, purporting to act under section 472 of the charter, without notice to the water company, suspended the rate of $45 per hydrant and fixed the rate at $18.50 per hydrant and offered to pay that rate to the water company. The water company refused to accept the reduced rate. It,

however, continued to furnish hydrant service and billed the city for the same at the old rate. In so doing it acted without a contract with the city.

In October, 1934, the Public Service Commission, upon its own motion, commenced an investigation of the rates charged for water sold by the defendant water company. Notice of the hearing was duly served upon the city. It did not, however, appear at the hearings and took no part in the investigation. After extensive investigation and hearings, the Public Service Commission fixed the rate to be charged by the water company for hydrant service at $40 per hydrant per year and also fixed the rate to be charged for water for domestic use. The water company thereafter, in accordance with the terms of the order, filed with the Commission a tariff schedule fixing the charges and rates as prescribed in the order of the Commission. Thereafter this action was commenced to secure a declaratory judgment declaring the order of the Commission null and void in so far as it fixed a rate to be paid for hydrant service.

It is conceded that prior to July 1, 1931, when article 4-B of the Public Service Law (Laws of 1931, ch. 715) became effective, the Commission was without authority to make the order in question. Article 4-B extended the jurisdiction of the Commission over water works corporations and the Legislature therein prescribed the Commission's powers and authority for the regulation of and methods for ascertaining the reasonable prices and rates to be charged for water. Section 89-a, the first section of the new statute, reads:

" § 89-a. Application of article. This article shall apply to the sale, furnishing and distribution of water for domestic, commercial and *public purposes*, not including bottled water."

Section 89-c provides:

" § 89-c. General powers of commission in respect to water supply. The commission: 1. Shall have general supervision of all water-works corporations, as herein

 ██,

before defined, having authority under any general or special law or under any charter or franchise to lay down, construct or maintain pipes, conduits, ducts or other fixtures in, on or under the streets, highways and public places of any municipality, for the purpose of furnishing or distributing water for domestic, commercial or *public uses*, * * *."

Section 5 of the Public Service Law, the general section conferring jurisdiction upon the Commission for the regulation and fixing of rates for public utilities, was amended at the same time that article 4-B was enacted by adding a new subdivision, 5-a. Section 5 reads in part:

" Jurisdiction of public service commission. The jurisdiction, supervision, powers and duties of the public service commission shall extend under this chapter: * * * * * * *

" 5-a. To the furnishing or distribution of water for domestic, commercial or *public uses* and to water systems and to the persons or corporations owning, leasing or operating the same."

Subdivision 5-a reads practically the same as the preceding five subdivisions relating to railroads, gas and electric corporations, steam plants, telephone lines and telegraph lines, except the words " public uses " have been added.

From a reading of the various sections quoted, it seems quite apparent that the Legislature has attempted to adopt a comprehensive scheme for the regulation of water companies and for the fixing of rates. That its jurisdiction extends to the fixing of rates for the use of water by municipal corporations seems clear from the use of the new words " public uses " contained in subdivision 5-a of section 5 of the Public Service Law, and the use of the same words in article 4-B. The use of those words can only refer to use of water by municipal corporations. If they do not have that meaning, their use is entirely

without purpose or meaning. We cannot attribute to the Legislature any such lack of purpose in the use of words. Were it not for section 472 of the city charter, no doubt could exist as to the intent of the Legislature. The Legislature in enacting article 4-B of the Public Service Law did not expressly repeal that section. The city charter, being a statute enacted by the Legislature, it was at liberty by subsequent enactment to limit, modify or repeal it in whole or in part. Repeal by implication is not favored and will be decreed only where a clear intent appears to effect that purpose. We are convinced that the Legislature by the enactment amending the sections of the Public Service Law has expressed such clear intent. Article 4-B, section 89-j, after providing that the Commission, after a hearing, may by order fix a just and reasonable rate to be charged for services, then provides: " notwithstanding that a higher or lower price has been theretofore prescribed by general or special statute, contract, grant, franchise condition, consent or other agreement."

Similar language is used in subdivision 4, section 89-c, which defines the general powers of the Commission in respect to water supply. Article 4-B, section 89-a, provides that the article shall apply to the sale of water for " public purposes." Section 89-c provides that the Commission shall have general supervision over water works corporations, distributing water for " commercial or *public uses.*" Section 89-i provides that upon complaint in writing as to rates by a mayor of a city in which a corporation is authorized to distribute water for " domestic, commercial or *public uses,*" the Commission shall investigate the complaint and after a hearing by order fix just and reasonable rates, notwithstanding a different rate has been fixed by special or general statute (§ 89-j). By the amendment of section 5 of the Public Service Law by adding subdivision 5-a, the Legislature expressly con-

ferred upon the Commission jurisdiction over the distribution of water for "domestic, commercial or *public uses.*"

When those laws were enacted in 1931, the Legislature is presumed to have known of the provisions of section 472 of the city charter (enacted in 1897) and intended to vest in the Public Service Commission the rate-making oower which it had formerly vested in the Commissioner of Water Supply, Gas and Electricity of the city by section 472 of the city charter. Otherwise, all of the various provisions of law vesting in the Public Service Commission jurisdiction over rates for the use of water for public purposes would be meaningless.

Jurisdiction of the Public Service Commission cannot be conferred by implication, but must be given by language which admits of no other reasonable construction. (*Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175.)

The statute in question confers jurisdiction upon the Commission by language which is clear and explicit and cannot be misunderstood. The language used is so repugnant to ' and inconsistent with the language of section 472 of the charter, that we are required to hold that the charter provision must yield to the later law.

The Public Service Commissions Law (Laws of 1910, ch. 480, § 66) defines the powers of the Commission in respect to gas and electricity sold by public utility corporations and regulates the exercise of business by such corporations. Subdivision 12 limits the jurisdiction of the Public Service Commission as to the right to compel such corporations to file schedules, contracts, rules and regulations with the Commission as follows: "but this subdivision shall not apply to state, municipal or federal contracts."

Article 4-B, section 89-c, subdivision 10, of the Public Service Law contains the same language, substituting the words "water-works corporation" in the appropriate places. The appellant urges that the language above

quoted excepts municipalities from the operation of the provisions of the Public Service Law governing the fixing of rates. We reach a different conclusion. That section has to do with the filing of schedules and contracts by water works corporations and the exception simply provides that the provisions of the section shall not apply "to state, municipal or federal contracts." The section has nothing to do with the general jurisdiction granted to the Public Service Commission to fix rates only as it constitutes a limitation on that power. At the time the order was made by the Public Service Commission, the city did not have a contract with the water company for furnishing hydrant service. The limitation contained in section 89-c, subdivision 10, "but this subdivision shall not apply to state, municipal or federal contracts," has no application under the facts here involved. A different question would be presented if at the time the order of the Public Service Commission was made, a contract had been in existence between the city and the water company and the Commission had attempted by order to abrogate and nullify such contract. When there is in existence a contract between a municipality and a water works company for water for a public use, the Public Service Commission is without authority to fix a rate therefor. If, however, there is no contract in force, the Commission upon written complaint as provided for in section 89-i shall conduct an investigation and fix a rate. The broad public policy involved in vesting in the Public Service Commission authority to fix the rates of public service corporations does not apply to the fixing of a rate when there is in existence a contract entered into between a municipal corporation and a water works company.

We believe that the conclusion which we have reached is in accord with the public policy of the State to vest the fixing of rates to be charged by public utility corporations in the Public Service Commission. We hold only

that the fixing of rates between the city and the water company in the absence of a contract, resides in the Public Service Commission, and that the amendments of the Public Service Law heretofore referred to have to that extent superseded and repealed the provisions of section 472 of the city charter. The questions in relation to other provisions of the city charter are now before this court for decision in the case of *Matter of City of New York* v. *New York Water Service Corp.* (274 N. Y. 100). We agree with the decision of the Appellate Division that the Special Term had jurisdiction under the facts of this case to render a declaratory judgment for the reason stated in the opinion of that court.

The judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment affirmed.