Isadore Booksteih, J.
Petitioners seek to review the action of respondent in permitting the intervenor-respondent to file a tariff schedule of rates for municipal street lighting. The basic contention of petitioners is that respondent lacks the power to regulate rates for municipal street lighting, by reason of an exception contained in subdivision 12 of section 66 of the Public Service Law. That section is a part of article 4 dealing with the regulation of price of gas and electricity. Section 66 confers upon respondent its powers on that subject.
Subdivision 12 of that section states that respondent shall “ have the power to require every gas corporation, electric corporation and municipality to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation, electric corporation or municipality; but this subdivision shall not apply to state, municipal or federal contracts.” (Emphasis supplied.)
It is the contention of petitioners that the sentence emphasized not only precludes respondent from requiring the filing of tariffs for municipal street lighting but also precludes respondent from *928 permitting the intervenor-respondent to file tariffs for municipal street lighting and deprives respondent of any power to regulate the charges for municipal street lighting.
It appears that petitioners arrange the charges for street lighting and equipment by negotiating private contracts with the intervenor-respondent.
Intervenor-respondent has indicated its intention of refusing to negotiate private contracts with municipalities, upon the expiration of present contracts, but intends to resort to uniformity by way of tariff schedules filed with respondent. The tariff schedules as filed do not affect existing contracts nor do they apply to municipalities presently having such contracts, until after their expirations. During the present contracts, they will have no application, except as to new equipment not covered by existing contracts.
Article 4-B of the Public Service Law deals with provisions relating to water and water companies.
Section 89-c thereof deals with the general powers of respondent in respect to water supply, and subdivision 10 thereof provides that respondent “ Shall have the power to require every water-works corporation to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such corporation; but this subdivision shall not apply to state, municipal or federal contracts.” (Emphasis supplied.)
Thus subdivision 10 of section 89-c is the exact counterpart of subdivision 12 of section 66 of the Public Service Law.
In City of New York v. Maltbie (274 N. Y. 90), it appears that the Jamaica Water Supply Company furnished water to a part of New York City under a contract which the city abrogated, so that there was no contract in force; the city purported to fix the rate for water to be furnished; the company refused to furnish the water at the rate fixed by the city but billed the city at the old rate provided for in the contract, which had been abrogated.
On its own motion, the Public Service Commission commenced an investigation of the rates charged for water by the water company and fixed the rate to be charged. The water company thereupon filed a tariff schedule fixing the charges and rates in accordance with the terms of the order of the commission.
The City of New York brought an action for a declaratory judgment adjudging that the commission had no jurisdiction to *929 fix or regulate hydrant rates for hydrant services theretofore or thereafter furnished by the water company.
The court dismissed the complaint and held that, where there was no contract between the water company and the municipality, the Public Service Commission had jurisdiction to fix the rates.
It seems to me that the decision in City of New York v. Maltbie (supra) is determinative of the issue presented here.
It is true that in this case there are in existence contracts between petitioners and the intervenor-respondent. However, the tariff schedules filed make no attempt to abrogate those contracts; rather, they expressly recognize their existence and continue them in force for the balance of the terms of their duration.
Nor does there appear to be any force in the contention that, as to petitioners, the tariff schedules are premature. There are a vast number of municipalities that are operating under tariff schedules previously filed. Since intervenor-respondent no longer intends to enter into contracts with municipalities for street lighting after the expiration of existing contracts, the filing by it of tariff schedules for all municipalities, including petitioners, but exempting them from the rates fixed in such tariff schedules, during the existence of their present contracts, can hardly be held to be premature. Nor is there any force in the contention that fixing rates now for petitioners, at a date in futuro, when their contracts expire, is arbitrary or confiscatory. Parenthetically, no law has been called to the court’s attention that would compel the intervenor-respondent to enter into any contract. It could not refuse to furnish the electricity to a municipality but, unless the Public Service Commission has the power to fix the rates, where no contract exists, the intervenor-respondent would be remitted to actions in the courts to recover on a quantum meruit basis. With the large number of municipalities in this State, such a situation would be chaotic and would make the courts a regulatory body when there exists a public agency, far better equipped to perform that function.
The respondent has continuing jurisdiction in the matter of fixing rates and, if perchance, at the time of the expiration of the contracts of petitioners, the rates fixed in the presently filed tariff schedules are improper, a complete remedy is then available by a proceeding before respondent, to correct any impropriety therein.
Motion to dismiss petition granted.