Chief Judge Fuld.
This is an action in which the plaintiff, Columbia Gas, seeks a declaration that certain contracts which defendant New York State Electric and Gas — one of the plaintiff’s competitors in upstate New York—has made or wishes to make with various municipalities are violative of section 65 of the Public Service Law and section 340 of the General Business Law, the so-called Donnelly Act.
In the areas in which the plaintiff and defendant compete, Columbia Gas is the sole distributor of natural gas, New York State Electric and Gas the sole distributor of electricity. Although the plaintiff and defendant are competitors with regard to gas and electric space heating, the defendant alone enjoys a monopoly in supplying energy for lighting. During 1967, the latter was furnishing electricity to its commercial and municipal customers as a general service pursuant to its particular rate schedule (P.S.C. No. 113, Service Classification No. 2), filed with the Public Service Commission. In addition to the rate for general service, there was a special provision for space heating service available upon written application to Any customer *122 using general service under this service classification and also using electricity as the sole source of space heating in a premises or segregated portion of a premises ’ ’. Such a customer was permitted to 11 have the energy used for such space heating * * * separately metered ” at a rate substantially less than that charged on the general service meter.
The defendant interpreted this special provision to mean that, since lighting is a source of heat, the electricity used for lighting could also be furnished through the space heating meter at the lower heating rate. In 1967, the defendant, therefore, offered the lower heating rate for lighting energy if the customer used electric heating and if the energy from lighting contributed at least 25% of the heat required for the particular building. By the end of 1967, the defendant was furnishing electricity for lighting at this special heating rate to approximately 55 customers in the Binghamton area. Objecting to this, the plaintiff commenced an action in the Supreme Court in November, 1967, challenging the defendant’s interpretation of its filed rate schedule. (Columbia Gas v. New York State Elec, & Gas Gorp., 56 Misc 2d 367.) The defendant moved to dismiss the complaint; the court denied the motion, holding that the complaint stated a cause of action under section 65 (subd. 5) of the Public Service Law, since the rate, as fixed by New York Electric and Gas, had not been filed with, and approved by, the commission (56 Misc 2d, at pp. 370, 372). The defendant thereafter filed amendments to its rate schedule in an attempt to formalize its practice. The commission, however, disapproved the rate and, following a hearing, directed the defendant, in November, 1968, to discontinue furnishing electricity for lighting at the space heating rate except with respect to existing customers served on that basis.
Unable to gain commission approval, the defendant sought to accomplish somewhat the same end by offering to enter into contracts with municipalities to provide such service to them on the basis set forth in the rejected amendment. The plaintiff, after learning of the defendant’s plan, commenced this action in February, 1969, seeking a declaration that the contemplated agreements had the effect of (1) “ granting an undue and unreasonable preference and advantage to [the defendant’s] contract customers,” in violation of subdivisions 2 and 3 of section 65 of the Public Service Law, and were (2) “ contrary to public policy, *123 illegal and * * * violative ’ ’ of section 340 of the General Business Law. The defendant moved to dismiss the complaint, and the Appellate Division, modifying the order entered at Special Term, sustained both causes of action. (Columbia Gas of N. Y. v. New York State Elec. & Gas Corp., 33 A D 2d 1057.) The case comes to this court by permission of the Appellate Division on certified questions.
The threshold challenge to the plaintiff’s standing to maintain the first cause of action is quickly answered. The contracts between the defendant and local municipalities, according to the plaintiff, have the effect of sufficiently reducing lighting charges so as to overcome the economic advantage of heating with gas instead of electricity—in consequence of which, the plaintiff asserts, municipalities will be induced to use electricity (supplied by the defendant) instead of gas for space heating in the construction or remodeling of municipal buildings. This claim of economic injury, caused by the business practices of a competitor in violation of the Public Service Law (§ 65, subd. 3), is sufficient to confer standing. (See, e.g., Data Processing Serv. v. Camp, 397 U. S. 150, 152; Swan Lake Water Corp. v. Suffolk County Water Auth., 20 N Y 2d 81, 88-89; De Matteis v. McGoldrick Realty Co., 259 N. Y. 452; Brooklyn City R. R. Co. v. Whalen, 191 App. Div. 737, affd. 229 N. Y. 570.) There is no merit to the defendant’s contention that, while the statute may allow a consumer to sue, it does not confer standing upon a competing public utility. It may not be gainsaid, to quote from a recent decision of the Supreme Court, that the “ interest , sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ”. (Data Processing Serv. v. Camp, 397 U. S. 150, 153, supra.)
We turn, therefore, to the merits of the appeal. The substance of the first cause of action is that the defendant, by offering to sell electric lighting energy to municipalities at a special contract rate, violates the proscriptions of section 65 of the Public Service Law.[1] The effect of these contracts is to furnish cer *124 tain municipal customers with electricity for lighting at a lower rate than that charged other customers, thereby resulting in an “ undue or unreasonable preference or advantage ” to those contracting municipalities (Public Service Law, § 65, subd. 3). The defendant urges, however, that section 65 is controlled by subdivision 12 of section 66 and that, consequently, its contracts are exempt both from the prohibitions of section 65 and from the jurisdiction of the Public Service Commission.
The defendant has misconstrued the statute. Section 65 deals, as its caption indicates, with ‘ ‘ Safe and adequate service; just and reasonable charges; unjust discrimination; unreasonable preference. ’ ’ Moreover, the prohibitions against discrimination and preferences set forth in the several subdivisions of section 65 are as broad as language can devise. Thus, subdivision 3 declares that “Ho gas corporation, electric corporation or municipality shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality ’ Subdivision 2 is just as broad and clear in prohibiting, ‘ ‘ directly or indirectly, by any special rate * * * or other device or method,” a gas or electric corporation or a municipality from charging anyone “ a greater or less compensation for gas or electricity * * * than it charges * * * any other person or corporation for doing a like and contemporaneous service ”.
Subdivision 12 of section 66 deals with a completely different subject.[2] It simply exempts gas and electric corporations from the necessity of filing “ state, municipal or federal contracts ” relating to rates or charges. More specifically, the subdivision recites that the commission shall
‘ ‘ Have power to require every gas corporation, electric corporation and municipality * * * to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made * * * or to be charged * * *, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to he used”. (Emphasis supplied.)
*125 Thereafter follows the clause relied upon by the defendant:
‘ ‘ but this subdivision shall not apply to state, municipal or federal contracts.”
To say that subdivision 12, with its limited exception clause, was designed to exempt contracts with government either from the regulatory provisions of section 65 or from the regulatory powers of the commission would constitute a gross misreading and an unwarranted extension of that subdivision. Most assuredly, it may not be read to manifest a total exemption from restrictions contained in the Public Service Law. This is evident from a reading of the statute. No other subdivision of section 66 mentions this exemption for government contracts and, significantly, section 65 — though it does contain certain limiting language (subds. 4 and 5) —makes no mention of exempting government contracts from its provisions.
In short, subdivision 12 merely serves the narrow function of exempting government contracts from the filing requirements set forth in section 66 and may not be read to immunize municipal contracts from the prohibitions against an “ undue or unreasonable preference ” found in section 65. (See, e.g., City of New York v. Maltbie, 274 N. Y. 90, 99; Matter of City of Buffalo v. New York State Public Serv. Comm., 40 Misc 2d 926.) We agree with the Appellate Division in this case that it does not ‘ ‘ limit the [commission’s] jurisdiction * * * in investigating rate setting concepts utilized in determining rates to be charged for services to be supplied under contract to municipalities. Nor does it prevent this court from determining whether defendant’s offer to contract with municipalities is discriminatory or allows an unreasonable preference in violation of subdivisions 2 and 3 of section 65.”
Our attention has not been called to any decision holding to the contrary. Indeed, in City of New York v. Maltbie (274 N. Y. 90, supra) —upon which our dissenting brethren seem to rely—the court expressly held that the exception contained in subdivision 12 had a narrow, limited meaning. “ That section ”, the court wrote, ‘ ‘ has to do with the filing of schedules and contracts * * * and the exception simply provides that the provisions of the section shall not apply ‘ to state, municipal or federal contracts ’ ” (274 N. Y., at p. 99). There is not the slightest intima *126 tion in the Maltbie opinion that subdivision 12 of section 66 manifests any exemption, total or otherwise, from the regulatory provisions of the Public Service Law.
As analysis of the legislation clearly establishes, there is nothing in subdivision 12 or any other part of section 66 which allows one to circumvent the prohibitions contained in section 65 against unjust discrimination or unreasonable preferences. As we have already demonstrated, the latter section is designed to prevent such illicit practices, whether the customer be a private party or a municipality and whether the preferential rate is effected by contract or otherwise. The present case is quite different from New York Tel. Co. v. Siegel-Cooper Co. (202 N. Y. 502, 506), upon which the defendant relies. In that case, the court held that the New York Telephone Company could, by contract, grant the City of New York a favorable discount rate for telephone service. Significantly, though, there was no issue of unfair competition ; it was a customer of the utility, not one of its competitors which initiated the suit, and the court’s sole concern was whether that customer could object to a lower rate allowed a municipality. As the court pointed out (202 N. Y., at p. 506),
“ [t]he controversy does not arise between the state and the plaintiff, or between the plaintiff and its stockholders, but between the plaintiff and a customer which had agreed to pay at the rate charged * * * The favored classes do not compete with the defendant in business and there is no statement as to the effect of the discrimination ”.
It is true that a public utility may, in fixing rates, favor a particular class of customers, such as municipalities (p. 511 et seq.), but there is no statement, in the Siegel-Cooper case or any other, that one utility may discriminate, if such discrimination violates the laws against unfair competition, placing its competitor, as it does, at a disadvantage. On the contrary, declared the court (202 N. Y., at p. 512), “ ‘ when the discrimination enures to the undue advantage of one man, in consequence of some injustice inflicted on another * * * the law intervenes for the protection of the latter ’ [Hays & Co. v. Pennsylvania Company, 12 Fed. Rep. 309, 311].”
*127 There is no basis for the suggestion that the plaintiff’s position with respect to “ municipal ” contracts presents a “ potential paradox ’ ’ on the ground that subdivision 12 of section 66 also exempts “ state ” and “federal” contracts. That subdivision, as already stated, has to do merely with the filing of contracts and, since it exempts from its filing requirements all government contracts, it applies to state and federal contracts as well as those with municipalities.
In sum, then, subdivision 12 of section 66 may not be read to apply to section 65 to sanction or excuse an undue or unreasonable preference in rates or charges. To find otherwise, would allow a gas or electric corporation to circumvent the broad regulatory provisions of section 65 simply by contracting with government entities. Such a result could hardly have been contemplated.
It follows, therefore, that the first count states a good cause of action.
The plaintiff’s second count charges the defendant with a violation of the Donnelly Act (General Business Law, § 340), in that it “is abusing its monopolistic position in the lighting market to restrict the freedom of municipalities to choose among competing energy sources in the space heating market. ” It is argued by the plaintiff that the defendant, by using the leverage of its monopolistic lighting position to encourage customers to use electricity for heating, has obtained a portion of the heating market to which it is not legally entitled.
The purpose of section 340 of the General Business Law is to prohibit “Every contract [or] agreement * * * whereby A monopoly * * * may be established or maintained, or whereby Competition or the free exercise of any activity * * * is or may be restrained”. We have previously declared that section 340 encourages a strong public policy in favor of free competition for New York” and represents “a public policy of the first magnitude.” (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N Y 2d 621, 625, 626.)
It is apparent that the defendant’s practice of offering the lighting discount solely to those customers who use electricity for space heating has the inevitable effect of inducing local municipalities to choose electricity as their energy source for heating. Such a business practice bears a superficial resem *128 blance to a tying arrangement which, by inhibiting competition in the market place, is unreasonable and illegal. (See Northern Pac. Ry. Co. v. United States, 356 U. S. 1; Fortner Enterprises v. United States Steel, 394 U. S. 495, 507.)
In a typical tying arrangement case, the seller or supplier, by virtue of his position in th» market for the tying product, has sufficient economic leverage to coerce his customers to take the tied product along with the tying item. In other words, in such a case, the former refuses to sell or supply the one item unless his customer also takes the second. Here, however, the defendant does not condition the sale of electricity for lighting on the municipality’s willingness to purchase electricity for space heating; instead, it simply offers lighting energy at a lower rate to those customers who purchase electricity for heating in order to promote the use of the latter. The defendant’s practice, therefore, differs from a tying arrangement in that its effectiveness derives from the inducement of a lower rate for lighting rather than from a power to coerce purchases by controlling the availability of a desired product. Furthermore, although a tying arrangement necessarily involves two distinct products — the tying and the tied—here it appears that only one item, electricity, is involved. (Cf. Times-Picayune v. United States, 345 U. S. 594, 613-614; Washington Gas Light Co. v. Virginia Elec & Power Co., 438 F. 2d 248; Gas Light Co. v. Georgia Power Co., 313 F. Supp. 860, 869*.)
But the mere fact that the challenged practice may not be deemed a tie-in does not automatically immunize it from attack under the Donnelly Act. Even though the defendant’s promotional activity is not illegal as a matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. United States v. Griffith, 334 U. S. 100,107 et seq.) Therefore, despite our reservations concerning the sufficiency of the second cause of action, we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry (see, e.g., Standard Oil Co. v. United States, 283 U. S. 163, 179; Chicago Bd. of Trade v. United States, 246 U. S. 231, 238-239), especially since there will, in any event, be a trial on the merits of *129 the first cause of action. Since, then, it does no violence to the plaintiff’s pleading to permit proof at the trial of possible anti-competitive effects, if any, of the defendant’s promotional plan, the motion to strike the second count of the complaint was properly denied.
Finally, we agree with the Appellate Division that the plaintiff’s failure to allege that notice of the commencement of this action had been given to the Attorney-General does not render the complaint defective (33 A D 2d, at pp. 1058-1059). The requirement that notice be given is designed solely 1 ‘ to apprise the Attorney-General that such an action was commenced so that he would be aware of the circumstances ” (33 A B 2d, at p. 1059). It may not be considered a condition precedent to the plaintiff’s cause of action.
The order appealed from should be affirmed, without costs, and the certified questions answered in the affirmative.

. Section 65 (subd. 2) prohibits any gas or electric utility from charging or receiving “ a greater or less compensation for gas or electricity ” than that which is charged or received from any other person for “ a like and contemporaneous service ”. Section 65 (subd. 3) prohibits “ any undue or unreasonable preference or advantage to any person, corporation or locality ”.

. Section 66 of the Public Service Law bears the caption, “ General powers of commission in respect to gas and electricity.”

 Affd. 440 F. 2d 1135.— [Rep.