MEENAN OIL Co., INC. et al., Respondents, *v.* LONG ISLAND LIGHTING COMPANY, Appellant.

Second Department, June 19, 1972.

234

*Edward M. Barrett* and *Kaye, Scholer, Fierman, Hays & Handler* (*Milton Handler, Jay G. Strum* and *Michael D. Blechman* of counsel), for appellant.

*Leonard L. Horn* for respondents.

SHAPIRO, J. The plaintiffs are fuel oil dealers who sell and deliver fuel oil for heating purposes to homeowners in the Town of Huntington. The defendant, Long Island Lighting Company (hereinafter referred to as Lilco), is a public utility which transmits, sells and distributes gas and electricity in the Town of Huntington.

The Town Board of Huntington adopted a resolution, which became effective in January, 1965, requiring telephone and electric wires to be installed underground, save in those cases in which such installation would result in practical difficulty or hardship. The gist of the complaint is that Lilco has unfairly taken advantage of that ordinance by installing underground electric lines free of charge to builders who agree to

install gas heaters in new homes, while levying installation charges upon builders who install oil heating apparatus. This conduct on the part of Lilco, plaintiffs allege, is a secret rebate adversely affecting free competition between the oil industry and the gas industry.

Lilco's answer admitted that with the approval of the Public Service Commission "since January 19, 1965, it has charged developers in the Town of Huntington the incremental cost, if any, of installing electric facilities underground."

The testimony clearly established that Lilco's share of the space heating market in Huntington has risen steadily since the passage of the ordinance in 1965. It also revealed that many promotional inducements are offered to builders by both the plaintiffs and the defendant in an attempt to influence the nature of the space heating equipment to be furnished in new homes.

Charles R. Pierce, a senior vice-president of Lilco, testified that charges for underground installation of *electricity* are permissive. The amount charged for installation depends upon factors such as terrain, topography and the location of the home. He also testified, without contradiction, that Lilco was not permitted to charge for installations of *gas* lines or of *overhead* electric lines.

Pierce stated that Lilco does not forgive installation charges for underground electricity. Rather, said Pierce, it determines whether the saving to Lilco by placing gas and electric lines in the one trench will be equivalent to the cost of establishing an overhead electric system and an underground gas system and that the builder is only charged for underground electric installation if the cost to Lilco for an all-underground installation is more than the cost to it of constructing *overhead* electric lines and *underground* gas lines.

The testimony discloses that in the majority of cases the cost of the joint underground facilities is less than the total cost of a separate overhead electric and an underground gas system. Apparently, this results from the development in the early 1960's of direct buried electric cable, which made it possible to lay cable in the ground without protective cladding, at considerably lower cost than had theretofore been possible.

The Special Term found that the evidence was less than conclusive as to whether the drop in the number of installations of fuel oil space heating systems in Huntington had been due to Lilco's practice. It concluded, however, that Lilco's practice of furnishing free installation of underground

electric lines for those builders who also installed gas heaters violated section 65 of the Public Service Law and was illegal and void under section 340 of the General Business Law.

The applicable portion of section 340 (the Donnelly Act) provides:

" 1. Every contract, agreement, arrangement or combination whereby

" A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby

" Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby

" For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void."

In *Matter of Aimcee Wholesale Corp. (Tomar Prods.)* (21 N Y 2d 621), the Court of Appeals noted that section 340 is a copy of section 1 of the Sherman Anti-Trust Act and represents for New York an equally strong public policy in favor of free competition.

In *Washington Gas Light Co.* v. *Virginia Elec. & Power Co.* (309 F. Supp. 1119), relied on by the Special Term, a gas company brought suit against an electric company (Vepco). Each company had a monopoly on its product in certain areas of Virginia. Vepco agreed to install electric lines underground free of charge for builders who went " all electric ", but levied a charge for such installation to builders who did not go all electric. Vepco later promulgated a different plan which permitted a credit against the installation charge based upon anticipated revenues, the net effect of which, again, was free installation to builders who went " all electric " and a charge to those who did not.

The court found Vepco's arrangement an illegal tie-in in violation of section 1 of the Sherman Act. It held that the gas company should not be required to subsidize the builder's payments of installation charges to Vepco in order to have access to the space heating market.

Subsequent to the decision by the Special Term, the District Court was reversed (*Washington Gas Light Co.* v. *Virginia Elec. & Power Co.*, 438 F. 2d 248), the Court of Appeals holding that since only one product — electricity — was involved, there could be no "tie-in" arrangement and that, in any event, there had been no artificial inflation of price.

There is less reason to apply the Sherman Act, or its State counterpart, to the facts of this case than there was in *Washington Gas Light*. There, installation charges were imposed without reference to the electric company's costs in an attempt to coerce builders to go "all electric". Here, however, the installation charges were computed on the basis of actual cost to Lilco. Lilco, by statute and by Public Service Commission rules, was obliged to install underground gas lines and overhead electric lines free of charge. If, by using joint trenching, it incurred no additional cost over the costs of installation of underground gas and overhead electricity, it obviously had no additional cost to pass on to the builder.

Our Court of Appeals recently considered a similar problem in *Columbia Gas of N. Y.* v. *New York State Elec. & Gas Corp.* (28 N Y 2d 117), in which Columbia Gas sought a declaration that certain contracts entered into by the defendant electric company violated both section 65 of the Public Service Law and the Donnelly Act (General Business Law, § 340).

The parties were competitors in the area of space heating. The electric company, however, was the sole supplier of energy for lighting, which was supplied pursuant to a rate schedule filed with the Public Service Commission. It supplied electricity at a lower rate for space heating than for electricity supplied for lighting purposes. The litigation resulted from contracts entered into by the electric company in which, in effect, it charged some of its customers at the lower rate for electricity used for lighting if they also agreed to use electricity for space heating. With regard to the claimed tie-in allegedly in violation of the Donnelly Act, the court held (p. 128):

"In a typical tying arrangement case, the seller or supplier, by virtue of his position in the market for the tying product, has sufficient economic leverage to coerce his customers to take the tied product along with the tying item. In other words, in such a case, the former refuses to sell or supply the one item unless his customer also takes the second. Here, however, the defendant does not condition the sale of electricity for lighting on the municipality's willingness to purchase elec-

tricity for space heating; instead, it simply offers lighting energy at a lower rate to those customers who purchase electricity for heating in order to promote the use of the latter. The defendant's practice, therefore, differs from a tying arrangement in that its effectiveness derives from the inducement of a lower rate for lighting rather than from a power to coerce purchases by controlling the availability of a desired product. Furthermore, although a tying arrangement necessarily involves two distinct products — the tying and the tied — here it appears that only one item, electricity, is involved. (Cf. *Times-Picayune* v. *United States,* 345 U. S. 594, 613–614; *Washington Gas Light Co.* v. *Virginia Elec. & Power Co.,* 438 F. 2d 248; *Gas Light Co.* v. *Georgia Power Co.,* 313 F. Supp. 860, 869.)

"But the mere fact that the challenged practice may not be deemed a tie-in does not automatically immunize it from attack under the Donnelly Act. Even though the defendant's promotional activity is not illegal as a matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. *United States* v. *Griffith,* 334 U. S. 100, 107 *et seq.*) Therefore, despite our reservations concerning the sufficiency of the second cause of action, we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry."

Here, as in *Columbia Gas,* no "typical tying arrangement" can be found, as Lilco has never threatened to withhold electricity from builders who do not purchase gas for heating. At most, therefore, it could be held liable only if it were found as a fact that its practice actually restrained competition, but the Special Term made no such finding, apparently on the ground that it was unnecessary to decide that issue, since it was of the opinion that the practice pursued by Lilco was a per se violation of section 340 of the General Business Law.

However, despite a lack of a finding on that issue, we hold that no new hearing is required, as Lilco has, in any event, not violated the Donnelly Act. The *Columbia Gas* case involved a reduction from normal rates as an inducement to the purchaser to take another service (space heating). Here, Lilco simply refrained from exacting a charge for installation of electric wiring when it in fact incurred no additional cost for that installation. It did not offer reduced rates for its service. Lilco's rates for the installation of underground electric wiring were based upon its cost. When (because of joint trenching and the ability to dispense with poles for overhead wiring)

it had no additional cost and therefore did not charge, it cannot be held to have violated the Donnelly Act in any particular. There is no requirement that a supplier of a product impose an artificial charge for a service which does not increase the supplier's cost, simply to ensure that the supplier does not attain an advantage over his competitors.

In connection with the claimed violation of section 65 of the Public Service Law the threshold question is whether the Special Term had any right to base its determination on an alleged violation by the defendant of that law. The complaint alleges that the "foregiveness" by Lilco is a secret rebate, but it does not mention the statute. The plaintiff's attorney stated on numerous occasions before and during trial that he was proceeding under the Donnelly Act. The first mention of section 65 of the Public Service Law appears in the Special Term's opinion. The contention that section 65 of the Public Service Law was violated was one which could properly have been raised in this action (*Columbia Gas of N. Y. v. New York State Elec. & Gas Corp.*, 28 N Y 2d 117, 123, *supra*).

Although the Special Term could have taken judicial notice of section 65 (CPLR 4511), it was patently unfair to decide the case upon that ground without having offered Lilco the opportunity to adduce evidence in support of its position (cf. *Farruggia* v. *Town of Riverhead*, 34 A D 2d 1008; *Oval Wood Dish Corp.* v. *North Creek Kiln Drying Co.*, 28 A D 2d 1032; *Rosenberg* v. *Lorraine Manor*, 19 A D 2d 733).

In any event, Lilco's arrangement did not, in my opinion, violate section 65 of the Public Service Law, subdivision 2 of which interdicts special rates and rebates, while subdivision 3 bars the giving of unreasonable preferences or advantages. Subdivision 6 of section 65 prohibits gas corporations from charging for the installation of gas apparatus. There is no corresponding provision with regard to the installation of electrical apparatus. Lilco is free to charge for such installations in accordance with its cost, subject to Public Service Commission rules.* To repeat, we hold that it is not dis-

---

* On December 28, 1971, and after the decision below, the Public Service Commission promulgated an order governing the installation of underground electrical apparatus. A minimum of 60 feet of underground distribution line per dwelling unit is to be installed free of charge. An electric company's general tariffs may provide for free installation of footage in excess of 60 feet and the Public Service Commission may grant permission for free installation of greater footage than allowed in general tariffs upon application to it by the company.

criminatory—nor is it a special rate, rebate or unreasonable preference—to refrain from imposing a charge based upon a fictitious additional cost where there is no such additional cost.

Accordingly, the judgment appealed from should be reversed, on the law and the facts, with costs, and the complaint dismissed.

HOPKINS, Acting P. J., MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered July 29, 1970, reversed, on the law and the facts, with costs, and complaint dismissed.