38 N.Y.2d 460 (1976)
State of New York, Appellant,
v.
Mobil Oil Corporation, Respondent.
Court of Appeals of the State of New York.
Argued November 18, 1975.
Decided January 6, 1976.
Louis J. Lefkowitz, Attorney-General (Charles A. La Torella, Jr., Samuel A. Hirshowitz and August L. Fietkau of counsel), for appellant.
Sanford M. Litvack and William C. Pelster for respondent.
Chief Judge BREITEL and Judges JASEN, WACHTLER and COOKE concur with Judge JONES; Judge GABRIELLI dissents and votes to reverse in a separate opinion in which Judge FUCHSBERG concurs.
*461 JONES, J.
We conclude that a systematic and deliberate practice of price discrimination by respondent oil company in the sale of gasoline to its dealers as alleged by the Attorney-General in this case would not fall within the proscription of *462 our State's Donnelly Act (General Business Law, art 22, § 340 et seq.).[1]
The allegations are that notwithstanding its establishment of a uniform tank wagon price in each terminal area, the oil company has granted substantial discriminatory rebates (so-called "dealer aid") to some of its dealers and not to others, and then inconsistently. The complaint charges that the effect of this practice has been to prevent many dealers of this oil company from competing with other dealers of the same company as well as with dealers in other brands; to enable the oil company to restrain competition by conducting price wars in some areas while maintaining artificially high prices in other areas, to the detriment of dealers and the public; to restrain competition and to interfere with the free exercise of activities among company dealers in the New York City metropolitan area; and to injure the public by the artificial manipulation of gasoline prices through discriminatory dealer aid.
The determinative provision of the Donnelly Act is found in subdivision 1 of section 340:
"Every contract, agreement, arrangement or combination whereby
"A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
"Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
"For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce *463 or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void."
We agree with the conclusion reached at the Appellate Division that the alleged practices of the oil company do not fall within the prohibition of this subdivision. We are impelled to this conclusion in large part by the history which lies behind the adoption of our State's Donnelly Act and its 80-year history in our courts and our Legislature.[2]
The Sherman Antitrust Act (now US Code, tit 15, § 1) was adopted by the Congress in 1890. Three years later, obviously inspired by the Sherman Act, New York adopted a statute strikingly similar in diction to the Federal statute (L 1893, ch 716). The State statute was amended in 1897 and again in 1899 when it acquired its present popular title, the Donnelly Act. Since 1899 the statute has been amended eight times, but for present purposes none of these amendments changed the scope or direction of the statute. Thus, the present Donnelly Act has been considered to have been modeled after the Sherman Act (e.g., Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621, 626; Meenan Oil Co. v Long Is. Light. Co., 39 AD2d 233, 236; Matter of Kates v Lefkowitz, 28 Misc 2d 210, 213).
Price discrimination per se is not and never has been within the purview of the Sherman Act. By the adoption of the Clayton Act in 1914 the Congress sought by supplementing the Sherman Act to prohibit price discrimination in specified circumstances.[3] In 1936 the Clayton Act was amended in turn by the Robinson-Patman Act (49 US Stat 1526, now US Code, tit 15, § 13), inter alia, to provide comprehensive Federal regulation of price discrimination. It is clear to us that reference to the history of and practice under the Federal antitrust laws demonstrates that if our Donnelly Act is to be considered a counterpart of the Sherman Act it does not extend to price discrimination as such.
The Attorney-General, however, would attach critical significance *464 to the fact that to the Sherman Act list of proscriptions, "contract, combination * * * or conspiracy" our Donnelly Act adds the term "arrangement", and he cites recognition by the courts of our State that the scope of Donnelly is broader than that of Sherman (e.g., People v American Ice Co., 120 NYS 443, affd 140 App Div 912; Eagle Spring Water Co. v Webb & Knapp, 236 NYS2d 266, 275-276). Although undoubtedly the sweep of Donnelly may be broader than that of Sherman, we conclude that under the familiar canon of statutory construction, noscitur a sociis, the term, "arrangement", takes on a connotation similar to that of the other terms with which it is found in company, and thus must be interpreted as contemplating a reciprocal relationship of commitment between two or more legal or economic entities similar to but not embraced within the more exacting terms, "contract", "combination" or "conspiracy". To be sure the practice charged in the complaint here may be described as "bilateral" to the extent that it pertains both to the oil company and to its dealers. On the other hand there is no allegation of any agreement or commitment on the part either of the oil company or of its dealers or any of them. To interpret the word "arrangement" as embracing any "practice", as the Attorney-General urges us to do, would be unwarranted as a matter of lexicology and, more significant, unjustified in the historical context of the statute. The addition of a conclusory allegation as to the effect of a described practice (here effecting restraint of trade) cannot operate, of course, to bring a one-sided practice which is outside the scope of the statute within its proscription.
Aside from the compelling considerations of statutory construction, we note that differential prices have long been a familiar characteristic of our free enterprise system, never thought to be either immoral or unlawful. There are many valid reasons for differentials based on accepted economic theory, turning for instance on cost justification, quantity purchases, financial stability of the buyer, local competitive context, intracompany or familial customer relationship, or other special circumstance. This is recognized by the affirmative defenses explicitly assured under the Robinson-Patman Act (US Code, tit 15, § 13; cf. Standard Oil Co. v Federal Trade Comm., 340 US 231, especially at pp 248-250). The single-price concept is of modern origin, perhaps appearing first in supermarket retail outlets. The circumstance, referred to below, *465 that selective pricing has not before been the target of complaints under section 340, in one aspect cannot be thought to be noteworthy. Until recent years it would have occurred to no one to challenge the propriety of differentiated pricing, absent any horizontal arrangement with other suppliers.
Were selective pricing having the effect of restraining trade, without more, as alleged here, to be held to be within the prohibition of our Donnelly Act, as the Attorney-General urges, intrastate suppliers in New York might be placed in an economically impossible situation. They would be precluded from meeting competition. Insofar as their transactions were in interstate commerce they would be protected to the extent of the availability of the affirmative defenses of Robinson-Patman; in intrastate commerce, without Robinson-Patman, they would have no such protection.
We note that in our State when the Legislature has sought to prohibit price discrimination it has chosen to do so on an industry-by-industry basis (e.g., Public Service Law, § 65, subd 2; Insurance Law, § 183, subd 1, par [c]; Alcoholic Beverage Control Law, § 101-b, subd 2; Agriculture and Markets Law, § 258-t) rather than by comprehensive proscription. For what slight additional persuasion it carries we also note that while 30 States have enacted State price discrimination counterparts of Robinson-Patman, 20 States have preferred, as does New York, to approach price discrimination on an industry-by-industry basis (1 CCH Trade Regulation Reporter, par 3510, at p 5401; par 3514, at p 5403).
In reaching the conclusion we do, we observe that never in the 80-year history of the statute has it been held that a practice of price discrimination such as that alleged here, even if it be further asserted that it had the effect of restraining trade, constitutes a violation of subdivision 1 of section 340. Our courts have consistently upheld vertical price fixing (Maroney, 19 Syracuse L Rev 819, 841; but cf. L 1975, ch 65). It would defy reality to suggest that never before has a practice of price discrimination comparable to that alleged here come to the attention of the office of the Attorney-General or of the Legislature. In this circumstance the absence of any attempt at prosecution by the Attorney-General or any competitor constitutes at least an implied interpretation that subdivision 1 of section 340 is not to be read as extending to such practices; and the attendant failure of the Legislature to amend the statute may be read as acquiescence in the fact of *466 noncoverage. (Cf. Engle v Talarico, 33 N.Y.2d 237, 242.) To the extent that the legislative enactment proscribes conduct, and in this instance conduct which is malum prohibitum rather than malum in se, the statute must clearly describe the prohibited conduct. (Cf. Lanzetta v New Jersey, 306 US 451, 453; Connally v General Constr. Co., 269 US 385, 391). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." (Bouie v City of Columbia, 378 US 347, 352.)
We conclude that the practice alleged in the first and second causes of action is not within the ambit of subdivision 1 of section 340 as it is presently drafted. Whatever may be the appeal or weight of arguments that the public should be protected against the practices alleged in this complaint, relief if any must come by action of the legislative branch.[4]
Accordingly, the order at the Appellate Division should be affirmed.
GABRIELLI, J. (dissenting).
The vital issue posed is whether allegations that a corporation substantially restrained competition and trade, unduly interfered with the free exercise of commercial activity and injured the public of this State by artificially manipulating the price of gasoline through discriminatory pricing practices, states a cause of action within the purview of the Donnelly Act (General Business Law, § 340 et seq.).
In this action brought by the State of New York against Mobil Oil Corporation (Mobil), the majority concludes that the complaint, insofar as it charges Mobil with engaging in and conducting discriminatory pricing practices, should be dismissed; and the premise for their conclusion is that the Donnelly Act was patterned after the Sherman Antitrust Act *467 (US Code, tit 15, § 1 et seq.) under which there is no proscription against price discrimination.
I cannot agree.
The Donnelly Act, an important (see Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621, 625-626) and broadly worded act was not intended to be given such a narrow construction. Thus, I must dissent and vote to reverse and reinstate the complaint.
Insofar as is here pertinent the Donnelly Act provides that:
"1. Every contract, agreement, arrangement or combination whereby
"A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
"Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
"For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void." (General Business Law, § 340, subd 1.)
By way of contrast, the Sherman Antitrust Act, in like pertinent part, provides that:
"1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *
"2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor" (US Code, tit 15, §§ 1, 2).
There are at least four compelling reasons for my disagreement with the majority.
First, the Donnelly Act is broader than its Federal counterpart in that it proscribes unlawful "arrangements" as well as "contracts", "conspiracies" and "combinations". Thus, it was *468 intended, and in fact has been so interpreted, to be broader in scope and coverage than the Sherman Act (see People v American Ice Co., 140 App Div 912; Eagle Spring Water Co. v Webb & Knapp, 236 NYS2d 266, 275-276). Significantly, section 1 of the Sherman Act has been restrictively viewed and held inapplicable to the activities of one business entity because it proscribes only unlawful contracts, conspiracies or combinations, each of which requires more than unilateral action (see Six Twenty-Nine Prods. v Rollins Telecasting, 365 F.2d 478; cf. United States v Standard Oil Co., 316 F.2d 884; House of Materials v Simplicity Pattern Co., 298 F.2d 867). The Donnelly Act, however, broadens the spectrum of Sherman Act proscriptions by adding "arrangements", thereby permitting the prosecution of a wider variety of wrongs. Moreover, to assume, as does the majority, that the Legislature did not intend the word "arrangement" to have substantive effect is to do violence to the canon of construction that each word in a statute must be presumed to have meaning and to have been inserted for a purpose (Matter of Tonis v Board of Regents of Univ. of State of N. Y., 295 N.Y. 286, 293, and cases cited therein; McKinney's Cons Laws of NY, Book 1, Statutes, § 231, p 390). Thus, the Donnelly Act is to be interpreted as covering price discrimination whereas the Sherman Act is not.
Second, while it is true that the complaint is couched in terms of price discrimination, it specifically alleges that the effect of Mobil's "contracts, agreements, arrangements and combinations have been and are, among others: (a) to prevent many Mobil dealers from competing effectively * * * (b) [t]o enable Mobil to restrain competition * * * (c) [t]o substantially restrain competition and trade and unduly interfere with the free exercise of activity in the conduct of business by Mobil dealers". In short, the complaint charges that through price discrimination Mobil has, and is, unlawfully and unreasonably restraining competition and trade which certainly constitutes activity outlawed by the Sherman Act (see, e.g., Peelers Co. v Wendt, 260 F Supp 193). Hence, even under the majority's limited-scope interpretation of the Donnelly Act, it is manifest that the complaint states a cause of action.
Third, in Columbia Gas of N. Y. v New York State Elec. & Gas Corp. (28 N.Y.2d 117) we held that (pp 128-129): "Even though the defendant's promotional activity is not illegal as a *469 matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. United States v. Griffith, 334 U. S. 100, 107 et seq.) Therefore, * * * we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry (see, e.g., Standard Oil Co. v. United States, 283 U. S. 163, 179; Chicago Bd. of Trade v. United States, 246 U. S. 231, 238-239), especially since there will, in any event, be a trial on the merits of the first cause of action. Since, then, it does no violence to the plaintiff's pleading to permit proof at the trial of possible anti-competitive effects, if any, of the defendant's promotional plan, the motion to strike the second count of the complaint was properly denied." The case at bar is analogous for here, as in Columbia Gas, the plaintiff alleges that it can be shown that defendant's business activities actually restrained competition, thereby violating the State antitrust laws. In addition, in this case, as in Columbia Gas, there will be a trial of certain other causes of action in any event. Columbia Gas should require us to conclude that the dismissal of the price discrimination causes of action is erroneous.
Finally, it is asserted that since Congress passed the Robinson-Patman Act (US Code, tit 15, §§ 13, 13a, 13b, 21) to proscribe price discrimination practices, the Sherman Act and thus, also, the Donnelly Act does not cover those activities. The Robinson-Patman Act is aimed primarily at nipping price discriminations in the bud and, hence, prevents any price discrimination regardless of whether commerce is being restrained or not, except, of course, for certain affirmative defenses (e.g., cost justification, meeting competition and changing market conditions).[*] However, and importantly, the Robinson-Patman Act was not designed to proscribe restraints of trade on a broad scale and thus does not affect the scope of the Sherman Act. Therefore, since the complaint charges that the pricing practices of the defendant unreasonably restrained *470 trade and competition, the charge is patently within the purview of the Sherman Act and perforce the Donnelly Act.
Nor am I persuaded to conclude otherwise by the fact that the Legislature has outlawed price discrimination in certain closely State-regulated public concerns and industries (see, e.g., Public Service Law, § 65, subd 2 [utility rates]; Alcohlic Beverage Control Law, § 101-b, subd 2 [liquor prices]; Insurance Law, § 183, subd 1, par [c] [premium rates]; Agriculture and Markets Law, § 258-t [milk prices]). In contrast, gasoline distribution and sales are not State regulated. Gasoline and oil are commodities which are to be traded freely and subjected to normal market conditions and the influence of supply and demand factors. This is not true, of course, with the regulated commodities which, of necessity, must be more closely controlled and, thus, the Legislature enacted statutes controlling price discrimination in the sale of the regulated commodities. That does not mean, however, that the Legislature intended there to be no control over the unregulated commodities especially where, as here, there are strong allegations that trade has been restrained and the consuming public injured. Thus, I must conclude that the challenged causes of action should be sustained.
The citizens of this State have a right to expect that the price they pay for commodities has been set by the forces of free trade and that they will not be bilked out of their earnings by unscrupulous business practices indulged in by uncaring entities which may not have the consumer's interest at heart. It was certainly the intent and expectation of the Legislature in enacting the Donnelly Act that such practices would be proscribed. To construe narrowly the statute designed to obviate undesirable business activities is to ignore its historic and fundamental purposes of preserving and promoting competition in commerce and protecting the consumer from the harm which flows from monopolistic conduct (see Park & Sons Co. v National Wholesale Druggists' Assn., 175 N.Y. 1; Matter of Davies, 168 N.Y. 89, 101; Matter of Attorney-General v Consolidated Gas Co., 124 App Div 401). The Attorney-General, commendably I think, has brought this action within the limits of his powers conferred upon him by the Legislature in order to protect those within his jurisdiction from suffering the ill effects of untoward business arrangements. The Attorney-General should not be curtailed in the *471 exercise of his responsibility, being discharged pursuant to clear legislative intent.
It seems clear that there can be no doubt as to the right of the Attorney-General to pursue the challenged causes of action in order to prohibit defendant's alleged activities which restrain fair competition and trade, resulting in the manipulation of the price of gasoline. If, however, there remains even the slightest doubt, this action, which has been brought to protect the traveling public from alleged illegal price fixing, should proceed to trial on all the remaining four causes of action, thus allowing the Attorney-General an opportunity to factually demonstrate the charged illegality (see, e.g., Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 N.Y.2d 117, 129, supra).
The order of the Appellate Division dismissing the first and second causes of action should be reversed and these causes of action should be reinstated.
Order affirmed, with costs.
NOTES
[1] The complaint in this action initially alleged six causes of action, in three sets of pairs  (1) price discrimination in the first and second causes of action; (2) vertical price fixing in the third and fourth causes of action; and (3) tie-in sales in the fifth and sixth causes of action. Injunctive relief was sought in the odd-numbered causes and the imposition of penalties in the even-numbered causes. The oil company moved under CPLR 3211 (subd [a], par 7) to dismiss all six causes of action for failure to state a cause of action. Supreme Court granted the motion as to the third and fourth causes (vertical price fixing) and denied it as to the other four causes. The parties then cross-appealed to the Appellate Division. Thereafter before argument the parties stipulated to withdraw all appeals before the Appellate Division except the oil company's appeal from the denial of its motion to dismiss the first and second causes of action. Thus, there was considered at the Appellate Division and is now before us on this further appeal only the pair of causes of action alleging price discrimination.
[2] For a detailed discussion of the legislative history of the Donnelly Act see NYS Bar Association, Section on Antitrust Law, Report of the Special Committee to Study the New York Antitrust Laws (1957) (pp 1a-20a); Maroney, Antitrust in "The Empire State": Regulation of Restrictive Business Practices in New York State, 19 Syracuse L Rev 819, 821-824 (hereafter "Maroney").
[3] Senate Rep No. 698, 63d Cong, 2d Sess 1 (1914).
[4] We find nothing in Columbia Gas of N. Y. v New York State Elec. & Gas Corp. (28 N.Y.2d 117), which calls for a contrary disposition. Because of the factor of utility rate regulation that case concededly did not involve price discrimination as such. The price discrimination there confronted was that in a particular factual setting, involving an abuse of monopoly power by a public utility within the proscription of section 65 of the Public Service Law. We do not denigrate the decision in Columbia Gas. We merely acknowledge that its holding does not dictate the conclusion that subdivision 1 of section 340 of the General Business Law must be stretched to embrace the nonreciprocal, unilateral practice alleged in the present case.
[*] As I interpret the majority opinion, one might conclude that the affirmative defenses in the Robinson-Patman Act have negatived the general rule that price discrimination is prohibited. With this I cannot agree. Such a theory overlooks the scheme of the statute itself which requires an alleged violator affirmatively to prove in a full-blown adversarial proceeding (and not on a motion to dismiss, as here) that the pricing policies were justifiable. Notably, the act was designed to limit the scope of the then extant affirmative defense and to strengthen price discrimination prohibitions (Federal Trade Comm. v Sun Oil Co., 371 US 505, 516; see, generally, Rowe, Price Discrimination Under the Robinson-Patman Act, pp 3-24).